1  Amy A. Mousavi, SBN 228388
2  Mousavi & Lee, LLP
   2020 Main Street, Suite 900
3  Irvine, California 92614
   Telephone (949) 864-9667
4  Facsimile (949) 622-8980
5
6  Attorneys for Defendant, SAMER SANNOUFI, MD.,
   aka SAM SANNOUFI, MD, an individual,
7
8              UNITED STATES DISTRICT COURT
9      CENTRAL DISTRICT OF CALIFORNIA (SOUTHERN DIVISION)
10

| | |
|---|---|
| 11 JAMAL HAMADAH, an individual, | Civil Action No. 8:17-cv-00132 CJC (JCGx) |
| 12 Plaintiff, | |
| 13 | The Honorable Cormac J. Carney |
| 14 vs. | **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 15 SAMER SANNOUFI, MD., aka SAM SANNOUFI, MD, an individual, | |
| 16 | |
| 17 Defendant. | |
| 18 | [Concurrently filed with Statement of Uncontroverted Facts and Conclusions of Law; Declaration of Amy A. Mousavi; Declaration of Samer Sannoufi] |
| 19 | |
| 20 | Date: January 22, 2018 |
| 21 | Time: 1:30 p.m. Dept.: 9B |
| 22 | |
| 23 | Complaint Filed: January 25, 2017 Trial Date: February 27, 2018 |
| 24 | |

25
26
27
28

                        1
            **MOTION FOR SUMMARY JUDGMENT**

**TO ALL PARTIES AND THEIR COUNSELS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 22, 2018 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 9B of the above-captioned court located at 411 West 4th Street, Room 1053 Santa Ana, CA 92701, Defendant Samer Sannoufi ("Defendant") will, and hereby does, move the court for summary judgment, or in the alternative, summary adjudication of all claims asserted against it in the above-captioned action.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 8, 2017, December 11, 2017, and December 15, 2017.

Defendant moves pursuant to Fed. R. Civ. P. 56(c) on the grounds that there is no genuine issue of material facts as to any of the claims asserted against it, and Defendant is entitled to judgment in its favor as a matter of law. This motion is based on the following grounds:

1.      Count One for Breach of Fiduciary Duties under Cal. Corp. Code §17704.09 is without merit as a matter of law, and because there are no triable issues as to the prima facie elements of the cause of action.

2.      Count Two for Failure to Provide Information under Cal. Corp. Code §17704.10 is without merit as a matter of law, and because there are no triable issues as to the prima facie elements of the cause of action.

3.      Count Three for Improper Distributions under Cal. Corp. Code §§17704.05-06 is without merit as a matter of law, and because there are no triable issues as to the prima facie elements of the cause of action.

4.      Count Four for Negligent Misrepresentation is without merit because there are no triable issues of material fact necessary to prove the prima facie elements of the cause of action.

5.      Count Five for Conversion is without merit as a matter of law, and because there are no triable issues as to the prima facie elements of the cause of action.

1        6.     Count Six for Unjust Enrichment without merit as a matter of law, and

2   because there are no triable issues as to the prima facie elements of the cause of action.

3        7.     Count Seven for Fraud in the Offering and Sale of Securities under Rule

4   10(b)(5) is without merit as a matter of law, and because there are no triable issues of

5   material fact supporting the elements of the cause of action.

6        This motion is based on this Notice of Motion, the accompanying Memorandum of

7   Points and Authorities, the Statement of Uncontroverted Facts and Conclusion of Law,

8   the Declaration of Amy A. Mousavi, the Declaration of Samer Sannoufi, the pleadings on

9   file with the Court, and upon such other and further oral and documentary matters as may

10  properly come before the Court.

11

12  DATED:  December 22, 2017         MOUSAVI & LEE, LLP

13

14

15                 By:    /s/ Amy A. Mousavi

16                      AMY A. MOUSAVI, ESQ.
Attorneys for Defendant, SAMER SANNOUFI,

17                      MD., aka SAM SANNOUFI, MD, an individual

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.   INTRODUCTION/STATEMENT OF FACTS…………………………………7

II.  LEGAL STANDARD………………………………………………...…9

III. IT IS UNDISPUTED THAT THE COMPANY WAS ILLEGAL………………..10

   A.  California Law Applies………………………………………………..10

   B.  Under California Law the Existence, Structure, Formation, Ownership, and Operation of the Company was Illegal……………………………....10

   C.  There are No Triable Issues Regarding the Prima Facie Elements of Breach of Fiduciary Duties under Cal. Corp. Code §17704.09………….13

   D.  There are No Triable Issues Regarding the Count for Failure to Provide Information………………………………………………………………14

   E.  There are No Triable Issues of Material Fact related to the Count for Improper Distribution under Corp. Code §§17704.05-06………….…....15

IV.  THERE IS NO EVIDENCE SUPPORTING PLAINTIFF'S CLAIM FOR NEGLIGENT MISREPRESENTATION………………………………………16

V.   THERE IS NO EVIDENCE SUPPORTING PLAINTIFF'S CLAIM FOR CONVERSION……………………………………………………………….18

VI.  THERE IS NO EVIDENCE SUPPORTING PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT……………………………………………………19

VII. THERE IS NO EVIDENCE SUPPORTING PLAINTIFF'S CLAIMS FOR SECURITIES FRAUD UNDER RULE 10(b)(5)………………………………19

   A.  S.E.C. Rule 10(b)(5) Does Not Apply to the Instant Case………………19

   B.  The Fraud Claim Must Fail Because there was No Actionable Misrepresentation, Intent, Reliance, or Damages………………………..20

VIII. CONCLUSION…………………………………………………………...21

**MOTION FOR SUMMARY JUDGMENT**

1

**TABLE OF AUTHORITIES**

2

**Cases**

3  *Ajaxo Inc. v. E\*Trade Financial Corp.* (2010) 187 Cal.App.4th 1295,1305……………..19

4

5  *Anderson v. Liberty Lobby*, 477 U.S. 242, 456 (1996)…………………………………9

6

7  *British Airways Bd. v. Boeing Corp.*, 585 F.2d 946 (9th Cir. 1978)………………………9

8

9  *Diediker v. Peelle Financial Corp.* (1997) 60 Cal.App.4th 288, 297……………………16

10

11  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)…………………………………....21

12

13  *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003)………………………………18

14

15  *Lathrop v. Healthcare Partners Medical Group* (2004) 114 Cal.App.4th 1412, 1420-

16  1421……………………………………………………………………………11

17

18  *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240………………………………………18

19

20  *Moore v. Regents of the Univ. of Cal.* (1990) 51 Cal.3d 120, 136………………………18

21

22  *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 196………………...16

23

24  *Retail Wholesale & Dep't Store Union Local 338 Retirement Fund v. Hewlett-Packard*

25  *Co.*, 845 F.3d 1268, 1274 (9th Cir.2017)………………………………………...20

26

27  *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 849 (1975)………………..20

28

**MOTION FOR SUMMARY JUDGMENT**

1

2
**Codes & Statues**

3   *Bus. & Prof. Code §§2052*……………………………………………………………………..10, 12

4   *Bus. & Prof. Code §§2286*………………………………………………………………………10

5   *Bus. & Prof. Code §§2400*………………………………………………………………………10

6   *Bus. & Prof. Code §§2406*……………………………………………………………………..11, 12

7   *Bus. & Prof. Code §§2409*…………………………………………………………….....11, 12

8   *Bus. & Prof. Code §§2416*…………………………………………………………….....11, 12

9   *Bus. & Prof. Code §§2417*………………………………………………………………………10

10  *Cal Corporations Code §§13401*…………………………………………………………10, 12

11  *Cal Corporations Code §§13401.5*……………………………………………………………...10

12  *Cal Corporations Code §§13403*………………………………………………………………10

13  *Cal Corporations Code §13406(a)*……………………………………………………………..11, 12

14  *Cal. Corporations Code §§17701 et. seq*…………………………………………………………10

15  *Cal Corporations Code §17704.06(a)*………………………………………………………...16

16  *Cal. Corporations Code §17704.09*……………………………………………………………13, 14

17  *Cal Corporations Code §17704.10(a)*……………………………………………………….....15

18  *Cal Corporations Code §17704.10(b)(1)*……………………………………………………15

19  Fed. R. Civ. P. Rule 56(c)………………………………………………………………..9

20  Fed. R. Civ. P. Rule 56(e)………………………………………………………………..9

21  S.E.C. Rule 10(b)(5)………………………………………………………………………19

22

23

24

25

26

27

28

**MOTION FOR SUMMARY JUDGMENT**

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.    INTRODUCTION/STATEMENT OF FACTS

This is a frivolous lawsuit. This dispute starts and ends with the Walk-In Urgent Care and Family Practice Clinic LLC, a California Limited Liability Company (hereafter the "Company"), which Plaintiff Jamal Hamadah ("Plaintiff") and Defendant Dr. Sam Sannoufi ("Defendant") formed in August of 2013. Prior to 2013, Defendant had lived and worked in the State of Arizona. So when he came to California to start his new medical practice here, Defendant was unaware of the difference between California laws and Arizona laws governing the formation and operation of medical corporations. It was not until later that Defendant learned that California had strict prohibitions against medical practices structured as a limited liability company, as well as non-physicians having ownership rights in medical practices. Upon discovery of his mistaken understanding of the law, Defendant immediately offered to rescind the agreement with Plaintiff. Despite having received his full investment back, Plaintiff refused to cease the illegal operation and filed this suit.

Defendant has been a licensed physician since 2001. (Separate Statement of Uncontroverted Facts "SS" ¶1). He started his medical practice in the State of Arizona, and prior to the 2013 events leading to the instant suit, Defendant had never owned a medical practice outside of Arizona. (SS ¶38). Sometime in 2013, Defendant moved to California and was considering purchasing a medical practice in California. This would be Defendant's first medical practice in California. (SS ¶39). In or about July 2013, Plaintiff, who was a personal acquaintance of Defendant at the time, discovered Defendant's plans to operate a medical practice in California. Upon discovering Defendant's plans, Plaintiff expressed his interest in investing in Defendant's new California practice. (SS ¶40). Unbeknownst to either Plaintiff or Defendant, unlike the laws of Arizona, the laws of California prohibit a non-physician, such as Plaintiff, from owning or operating a medical practice. (SS ¶41). Thus, in or around August, 2013, Plaintiff and Defendant formed

**MOTION FOR SUMMARY JUDGMENT**

Walk-In Urgent Care and Family Clinic LLC, a member managed limited liability company (the "Company") in Riverside, California. (SS ¶44).

Since Dr. Sannoufi was to be responsible for the provision of medical services, most of the efforts to form the Company was spearheaded by Plaintiff. Plaintiff communicated with MyUSACorporation.com, which is a service similar to Legal Zoom, and arranged for the Company's formation in California. (SS ¶45). Specifically, Plaintiff chose the type of the entity and executed the Power of Attorney on behalf of the Company to allow MyUSACorporation to file certain papers with governmental agencies. (SS ¶46). Plaintiff also signed, under penalty of perjury, the application to obtain an Employer Identification Number as the "Managing Member of the Company."(SS ¶47). The formation documents and communication from MyUSACorporation was addressed to Plaintiff; Dr. Sannoufi was a passive follower in Plaintiff's efforts to set up the Company. (SS ¶48). Ultimately, MyUSACorporation prepared the Operating Agreement for the Company and submitted said Operating Agreement to Plaintiff. (SS ¶49). The Operating Agreement, which issued 50% membership interest to each Dr. Sannoufi and Plaintiff, as well as the formation of the Company, was accepted by both Dr. Sannoufi and Plaintiff. (SS ¶50).  Moreover, both, Hamadah and Dr. Sannoufi signed a Certificate of Formation certifying that they both, as members, formed the Company as an LLC and that they approved the Operating Agreement. (SS ¶51).

Plaintiff put up $80,000 to the Company. (SS ¶56).  Per the terms of the agreement, Dr. Sannoufi was supposed to receive an annual salary of at least $180,000. (Sannoufi Decl. ¶30).   The net *profit,* after payment of Salary and other expenses, were to be split 50-50 between Plaintiff and Defendant. (SS ¶58). Dr. Sannoufi was never able to collect his full salary, but by 2016, Plaintiff had received at least $98,000 in distributions, meaning he received his full investment back, plus more. (SS ¶59).

In or about September or October of 2016, Dr. Sannoufi discovered for the first time that the shared ownership and profit sharing arrangement with Plaintiff was in violation of California law. (SS ¶60). Dr. Sannoufi immediately notified Plaintiff, who

8

**MOTION FOR SUMMARY JUDGMENT**

1  then became upset and insistent on continuing the illegal partnership with Dr. Sannoufi.

2  When Dr. Sannoufi refused to knowingly violate the law, and risk his license status with

3  the Medical Board of California, Plaintiff initiated this action on January 25, 2017.

4       Around the time Defendant discovered the illegality of the Company, he received a

5  letter from the Company's landlord terminating the lease and requesting the Company

6  vacate the premises by December 13, 2016; no option to extend or renew was available.

7  (SS ¶62). The Company's operation has been shut down since late 2016. (SS ¶63).

8       Despite having received more than his investment of $80,000, and despite there

9  being no Company in existence or in operation as of December 2016, Plaintiff's First

10  Amended Complaint seeks "damages in an amount to be proven at trial." It is unclear

11  what the basis for Plaintiff's claims are, however, what is clear is that none of the counts

12  alleged in Plaintiff's First Amended Complaint are with merit. Counts One, Two, Three,

13  Five, and Six fail as a matter of law, as they are premised on the existence of a valid LLC

14  under the laws of California. Those Counts further fail to state a claim because there are

15  no triable issues of material fact that need to be adjudicated. Counts Four and Seven fail

16  because there is simply no evidence to support the requisite prima facie elements of the

17  causes of action.

18  ## II.    LEGAL STANDARD

19       Summary judgment may be granted if "there is no genuine issue as to any material

20  fact" and the "moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

21  Rule 56(c); *British Airways Bd. v. Boeing Corp.*, 585 F.2d 946 (9th Cir. 1978). If the

22  moving party carries the burden of making the initial showing that it is entitled to

23  judgment, the burden then shifts to the party opposing the motion, who must go beyond

24  the pleadings to "set forth specific facts showing that there is a genuine issue for trial."

25  Fed. R. Civ. P. Rule 56(e); *Anderson v. Liberty Lobby*, 477 U.S. 242, 456 (1996).

26       In the instant case, there is no genuine issue of any material fact supporting any of

27  the cause of action, thus, the Court should grant summary judgment in favor of

28  Defendant.

III.    IT IS UNDISPUTED THAT THE COMPANY WAS ILLEGAL.

There is no genuine dispute as to the law governing the formation and operation of a medical practice in California. Under the laws of the State of California, the Company's formation, ownership, and existence were illegal and any Operating Agreement therefor is void and unenforceable. Because the Company was illegal and invalid as a matter of law, any claims premised on the existence of a valid LLC fails as a matter of law. This includes Count One for Breach of Fiduciary Duties, Count Two for Failure to Provide Information, Count Three for Improper Distribution, Count Five for Conversion, and Count Six for Unjust Enrichment.

A.    California Law Applies.

The Company is a California LLC, with an Operating Agreement calling for the application of California law. (SS ¶3). This is undisputed.

Counts One, Two, and Three claim violations under *Cal. Corporations Code* §§17701 et. seq., which fall under Title 2.6 of the *Corporations Code*, titled "California Revised Uniform Limited Liability Company Act." Under Article 1 "General Provisions", it provides definitions of various terms used under the Title, as well as the specific caution that "Nothing in this title shall be construed to permit a domestic or foreign limited liability company to render professional services, as defined in subdivision (a) of Section 13401 and in Section 13401.3, in this State." *Corp. Code* §17701.04(e). Section 13401(a) further defines "professional services" as "any type of professional services that may be lawfully rendered only pursuant to a license, certification, or registration authorized by the Business and Professional Code, the Chiropractic Act, or the Osteopathic Act."

B.    Under California Law the Existence, Structure, Formation, Ownership, and Operation of the Company was Illegal.

Under California law, non-physicians are strictly prohibited from owning and/or controlling medical services companies. *Bus. & Prof. Code* §§2052, 2286, 2400, 2417; *Corp. Code* §§13401, 13401.5, 13403. Specifically:

1) *California law prohibits an LLC from owning or operating a Medical practice.* A medical practice cannot operate as a Limited Liability Corporation. *Bus. & Prof. Code* §§2406, 2416; *Lathrop v. Healthcare Partners Medical Group* (2004) 114 Cal.App.4th 1412, 1420-1421.  Thus, the Company's existence was a *per se* violation of law, a violation which Defendant attempted to cure by dissolving the Company. (SS ¶61). If Plaintiff ever had any right or interest in the Company, those rights or interests were extinguished with the close of the Company.

(2) *California law prohibits a non-licensed physician from having any ownership interest or shares in a medical practice.* Section 13406(a) of the California Corporations Code provides in part that:

> "shares of capital stock in a professional corporation may be issued only to a licensed person or to a person who is licensed to render the same professional services in the jurisdiction or jurisdictions in which the person practices, and any shares issued in violation of this restriction shall be void… No shareholder of a professional corporation or of a foreign professional corporation qualified to render professional services in this state shall enter into a voting trust, proxy, or any other arrangement vesting another person (other than another person who is a shareholder of the same corporation) with the authority to exercise the voting power of any or all of his or her shares, and any such purported voting trust, proxy or other arrangement shall be void."

The Company's operating agreement and the purported issuance of 50% interest to Plaintiff are thus illegal. Notwithstanding the illegality, Plaintiff already received in excess of his investment in the Company. (SS ¶59). Thus, there is no Company left, and there are no damages owed to Plaintiff.

(3) *California law prohibits an unlicensed person, such as Plaintiff, from receiving the benefits of the income of the medical practice "in any manner."* Bus. and Prof. Code § 2409 provides:

1    "The income of a medical and podiatry corporation attributable to professional

2    services rendered while a shareholder is a disqualified person, as defined in Section

3    13401 of the Corporations Code, shall not in any manner accrue to the benefit of

4    such shareholder or his or her shares in such a professional corporation.

5    Based on the foregoing, Plaintiff is legally prohibited from sharing the income of

6    the Company, and any agreement in contravention of this law is illegal and unenforceable.

7    Again, notwithstanding the illegality, Plaintiff did receive the benefits of the income of

8    the Company. (SS ¶59). Plaintiff cannot be entitled to any more than what he has already

9    received. What Plaintiff is attempting to do is collect more than his "investment", which

10   is in violation of *Bus. and Prof. Code* § 2409, which prohibits a disqualified person from

11   receiving the benefits of the income of the medical practice "in any manner." Based on

12   the forgoing Code sections, Plaintiff, having received his "investment" back in full, has

13   no damages left to recover under the applicable law.

14   The Company's structure, formation, and operation are illegal under California

15   law, and thus, the Company's Operating Agreement is void ab initio and unenforceable.

16   Specifically, the contract at the center of the current dispute is void as a matter of law,

17   under *Business and Professions Code* §§2052, 2406, 2416, and *California Corp. Code*

18   §13406(a), because all of these code sections prohibit Plaintiff, a non-licensed person,

19   from owning any part of a medical practice, which is the very thing the alleged contract

20   does. *Bus. and Prof. Code* §2409 further prohibits Plaintiff from receiving the benefits of

21   the income of the medical practice, which precludes any damages based on any

22   income/profit made by the Defendant. In other words, there is no valid relationship,

23   contractual or otherwise, that Plaintiff can claim to establish his causes of action for

24   breach of fiduciary duty, failure to provide information, or improper distribution, and

25   there are no damages that Plaintiff can lawfully claim from the business income of a

26   medical practice.

27   As if the law was not clear enough regarding the illegal structure of the Company,

28   the Operating Agreement of the Company itself also makes clear the "Term" of the

1 Company was terminated upon the occurrence of "Any event which makes it unlawful for

2 the business of the Company to be carried on by the Member." (Exhibit A, attached to

3 Sannoufi Declaration).  As it currently stands, thus, there is no law or contract that

4 validates the Company's structure and operation. Any claims based on the existence of

5 the LLC should be summarily adjudicated in Defendant's favor.

6       **C.      There are No Triable Issues Regarding the Prima Facie Elements of**

7               **Breach of Fiduciary Duties under Cal. Corp. Code §17704.09**

8               As a matter of law, because the Company's structure, formation, and operation was

9 illegal, and because its Operating Agreement was void ab initio and unenforceable, there

10 is no valid LLC subject to Corp. Code §17704.09. Without a valid LLC in existence, there

11 are no members, and there are no fiduciary duties among non-existent members for a non-

12 existent LLC. Even if the Company is found to be valid, despite every applicable statute,

13 case law, and public policy saying otherwise, Plaintiff's case still fails because there are

14 no triable issues of material facts for the Count of Breach of Fiduciary Duties. Cal. Corp.

15 Code §17704.09, provides in relevant part:

16          (b) A member's duty of loyalty to the limited liability company and the other
            members is *limited to* the following:
17               (1) To account to the limited liability company and hold as trustee for it any
            property, profit, or benefit derived by the member in the conduct and winding up of
18          the activities of a limited liability company or derived from a use by the member of
            a limited liability company property, including the appropriation of a limited
19          liability company opportunity.
                 (2) To refrain from dealing with the limited liability company in the conduct
20          or winding up of the activities of the limited liability company as or on behalf of a
            *person having an interest adverse* to the limited liability company.
21               (3) To *refrain from competing* with the limited liability company in the
            conduct or winding up of the activities of the limited liability company.
22          (c) A member's duty of care to a limited liability company and the other members
            in the conduct and winding up of the activities of the limited liability company is
23          *limited to refraining from engaging in grossly negligent or reckless conduct,*
            *intentional misconduct, or a knowing violation of law.*
24          (d) A member shall discharge the duties to a limited liability company and the
            other members under this title or under the operating agreement and exercise any
25          rights consistent with the obligation of good faith and fair dealing.
            (e) *A member does not violate a duty or obligation under this article or under the*
26          *operating agreement merely because the member's conduct furthers the member's*
            *own interest.*
27          There is no evidence to support Plaintiff's count for Breach of Fiduciary Duties

28 under any of the subparagraphs of this section. The alleged misconducts all fail to state a

claim for breach of loyalty or care. For example, Plaintiff's breach of fiduciary duties claim is based on the enumerated allegations of ¶46 of his First Amended Complaint. (Exhibit B to Mousavi Decl.) Specifically, the alleged misrepresentation regarding the down-payment amount, the legality of the LLC structure, or estimated profits allegedly happened *prior* to the formation of the Company, to induce Plaintiff's investment in the Company. (SS ¶13). Prior to the formation of the Company, however, there was no LLC, and thus, there was no fiduciary duty owed between Plaintiff and Defendant.

Additionally, Plaintiff's allegation that Defendant did not do the bookkeeping for the Company, or respond to Plaintiff's counsel's demand letter at the outset of litigation are not "fiduciary duties" covered by §17704.09. (¶¶46(b) and (c), First Amended Complaint, Exhibit B of Mousavi Decl.) The language of §17704.09 limits breaches of fiduciary duties within the context of a California LLC to a few items, hence the plain language provides that duty is "limited to refraining from…" Meaning, under this section, fiduciary duty does not require affirmative doing of any good acts, but rather the refrainment of certain bad acts.

The remainder of ¶46 lists items that are simply false, for which Plaintiff has no supporting evidence. Defendant challenges the Plaintiff to provide any evidence, besides his own unverifiable words, to oppose this point. Count One ultimately fails because as a matter of law, there was never a valid LLC subject to the section. The Company and its Operating Agreement was void and unenforceable, negating any claim based on the existence of a valid LLC under the Corporations Code.

**D.    There are No Triable Issues Regarding the Count for Failure to Provide Information.**

Count Two for Failure to Provide Information is also without merit as a matter of law. This Count also depends on the existence of a legal LLC under the laws of California, to which the section applies. As established above, the Company's structure, formation, and operation were all illegal, and void ab initio. Furthermore, the claim is without merit because there are no trial issues of material fact surrounding this allegation.

1  Plaintiff's second count is based on the allegation that Defendant somehow had the

2  obligation to maintain and provide certain information regarding the LLC to Plaintiff.

3  Specifically, Plaintiff claims that he unsuccessfully sought copies of documents required

4  by 17701.13(d), subsections (1), (2), and (4). These include: (1) current list of each

5  member with their address, contribution amounts, and shares in profits and losses, (2)

6  current list of each member with their address (4) tax information and returns.

7        Count Two fails not just as a matter of law, for an illegal/void LLC, but even on a

8  factual basis. The obligation to provide information is on the "member in possession of

9  the requested information." Corp. Code §17704.10(a). This is clearly Plaintiff. During the

10  years the Company was in operation, Plaintiff possessed and had access to the corporate

11  documents related to the Company's structure and formation, including the address of

12  Defendant, the only other member besides Plaintiff, Company's banking

13  records/information, and tax information/returns, all of which Plaintiff produced to

14  Defendant during the course of discovery in this matter. (SS ¶23). So any duty to provide

15  information would have fallen on Plaintiff, not Defendant.

16        Furthermore, Plaintiff's claim raises no triable issue of material fact because

17  Plaintiff's first request for information was made *after* the closure of the Company.

18  Section 17704.10 provides a right to inspect "during normal business hours". Corp. Code

19  §17704.10(b)(1). The Company was forced to shut down before December 13, 2016, with

20  the discovery of the illegality and the landlord termination of the lease. (SS ¶62-63). By

21  the time Plaintiff's counsel sent Defendant the demand letter in December 23, 2016, non-

22  compliance to which is the basis of Plaintiff's second count, there was no Company, no

23  working members, and no normal business hours. Thus, Count Two fails as a matter of

24  law and fact, and the Court should grant summary adjudication as to this issue.

25        **E.    There are No Triable Issues of Material Fact related to the Count for**

26              **Improper Distribution under Corp. Code §§17704.05-06.**

27        Again, because there was no legal existence of the Company under Title 2.6 of the

28  Corporations Code, all counts based on the application of the Corporations Code fail as a

15

**MOTION FOR SUMMARY JUDGMENT**

1  matter of law. Moreover, there is no triable issue of material fact remaining to be

2  adjudicated. It is undisputed that Plaintiff and Defendant received the same amount of

3  distribution each year between 2013 and 2016. (SS ¶32). The amounts of the distributions

4  are notated in each parties' yearly Schedule K-1s, which were prepared and filed by the

5  Company's CPA. (SS ¶32). The amounts of distribution were determined by the CPA's

6  calculation of the net ordinary income, divided by two. (SS ¶32). Meaning, after all the

7  Company's expenses were paid, the net income was divided in exactly half and

8  distributed to each Plaintiff and Defendant. In 2013, the Company had a net loss, which

9  resulted in neither party receiving a net distribution. (SS ¶33). Between 2014-2016, both

10  parties received a net positive distribution of equal amounts. (SS ¶34-36).

11  Not only is there absolutely no fact reflecting any possibility of Defendant taking

12  out improper distributions from the Company, section 17704.06 imposes a personal

13  liability "*to the limited liability company" f*or the amount of the distribution that exceeds

14  the amount that could have been distributed without the violation of Section 17704.05."

15  Corp. Code §17704.06(a). In other words, even assuming, *arguendo*, Defendant somehow

16  breached section 17704.05, any liability of Defendant is to the Company, not Plaintiff.

17  **IV.   THERE IS NO EVIDENCE SUPPORTING PLAINTIFF'S CLAIM FOR**

18  **NEGLIGENT MISREPRESENTATION.**

19  The elements of negligent misrepresentation are (1) a misrepresentation of a past or

20  existing material fact, (2) made without reasonable ground for believing it to be true, (3)

21  made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable

22  reliance on the misrepresentation, and (5) resulting damage." *Ragland v. U.S. Bank*

23  *National Assn.* (2012) 209 Cal.App.4th 182, 196. If defendant's belief "is both honest and

24  reasonable, the misrepresentation is innocent and there is no tort liability." *Diediker v.*

25  *Peelle Financial Corp.* (1997) 60 Cal.App.4th 288, 297.

26  Defendant denies having made any misrepresentations about the legality of the

27  Company's formation and structure, prior to Plaintiff's decision to invest in the Company.

28  Rather, Defendant honestly and reasonably was unaware of the different nuances between

1   Arizona and California laws governing medical practices. (SS ¶41-43). Because

2   Defendant made no misrepresentations, or any representations made by Defendant was

3   made with reasonable grounds for believing it to be true, and because there were no

4   resulting damages to Plaintiff, this Count fails to establish a genuine dispute as to at least

5   two essential elements of the claim.

6   The overwhelming documentary evidence demonstrates that Plaintiff spearheaded

7   the organization and formation of the Company. This included setting up accounts of

8   MyUSACorporation.com ("MyUSA") to create Articles of Incorporation, Operating

9   Agreement, Employer Identification Number, etc. (SS ¶45-50). A close review of the

10  email communication with MyUSA shows that the majority of the emails were addressed

11  directly to Plaintiff, where Defendant is not even a recipient or a passive follower in the

12  process. (SS ¶48-49). When and how could have Defendant made any misrepresentation

13  about the legality of the Company when he was not even involved in the communication?

14  Plaintiff cannot in good faith refute the evidence of these documentary evidence to create

15  any genuine dispute.

16  Moreover, before Plaintiff put in any money, Defendant and Plaintiff jointly

17  retained a California lawyer to review and approve the purchase of Dr. Kistler's practice,

18  which ultimately became the Company. (SS ¶53). In this purchase agreement, it is clearly

19  represented that the Company is an LLC; yet, Defendant and Plaintiff's joint counsel

20  failed to catch the legal error, and the impropriety of the LLC structure was never raised

21  as an issue to anyone. (SS ¶55). Defendant justifiably relied on the advice of the

22  Company's legal counsel that the purchase and taking over of Dr. Kistler's practice was in

23  the parties' best interest and, most importantly, in compliance with all applicable laws of

24  the state. He had good and reasonable grounds to believe that the Company was legally

25  proper.

26  Another fatal flaw in Plaintiff's claim for Negligent Misrepresentation is the lack

27  of damages. There is no triable issue as to fact relating to damages, because Plaintiff

28  admits he received more than his $80,000 investment back. (SS ¶59). Meaning, Plaintiff

**MOTION FOR SUMMARY JUDGMENT**

has been fully restituted. Plaintiff not only saw the return of his entire investment, he saw more on top of that. (SS ¶59). Because crucial elements of the claim cannot be proven as to this Count, the Court should grant summary adjudication in favor of Defendant as to Negligent Misrepresentation.

## V.   THERE IS NO EVIDENCE SUPPORTING PLAINTIFF'S CLAIM FOR CONVERSION.

Plaintiff claims conversion of three specific items: (1) "patient relationships", (2) "business opportunities", and (3) "goodwill." None of these are recoverable items under California law. (¶68, Exhibit B, First Amended Complaint, to Mousavi Decl. ¶3). The Court of Appeals applies a three-part test to determine whether a property right exists which will support a claim of conversion: (1) there must be an interest capable of precise definition; (2) it must be capable of exclusive possession or control; and (3) the putative owner must have established a legitimate claim to exclusivity. *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003).

The problem with Plaintiff's conversion claim is that patient relationships, business opportunities, and goodwill are not capable of precise definition, nor capable of exclusive possession or control. (SS ¶75-77). Defendant is not even sure what patient relationships or business relationships refer to. Because none of the items allegedly converted satisfy the three-part test, no valid claim for conversion has been stated by Plaintiff.

Moreover, the elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240. Essential to conversion is that plaintiff have right to own or possess the allegedly converted property. One who has neither title nor possession, nor any right to possession, cannot sue for conversion. *Moore v. Regents of the Univ. of Cal.* (1990) 51 Cal.3d 120, 136.

What is missing from Plaintiff's conversion claim is any material dispute as to whether Plaintiff had any right to own or possess any property of the Company (beyond

18

**MOTION FOR SUMMARY JUDGMENT**

the $80,000 investment, which Plaintiff already got back). As a matter of law, the Company was illegal and its Operating Agreement void and unenforceable. This was based in part because California law prohibits a non-physician, like Plaintiff, from owning shares in a medical practice. (SS ¶65-69). Meaning, Plaintiff is barred from owning the Company and by extension property of the Company. Without the underlying right to ownership or possession, or even damages, Plaintiff's conversion claim fails as a matter of law.

## VI.   THERE IS NO EVIDENCE SUPPORTING PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT.

Unjust enrichment is synonymous with restitution. *Ajaxo Inc. v. E\*Trade Financial Corp*. (2010) 187 Cal.App.4th 1295,1305 ("The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of or for *property or benefits received* under such circumstances as to give rise to a legal or equitable obligation to account therefor"). It is undisputed Plaintiff received more than $98,000 in distributions from the Company based on his $80,000 investment. (SS ¶59). He has been made more than whole.

On the other hand, Defendant was never able to collect his full salary during any year the Company was in operation. (SS ¶90). The tax returns prepared and filed by the Company's CPA show the exact amounts of distribution received by each party during each year. (SS ¶91). Defendant's distribution each year equaled Plaintiff's every year from 2013 to 2016. (SS ¶91-95). Based on the undisputed documentary evidence, Plaintiff cannot prove unjust enrichment.

## VII.   THERE IS NO EVIDENCE SUPPORTING PLAINTIFF'S CLAIMS FOR SECURITIES FRAUD UNDER RULE 10(b)(5).

### A.   S.E.C. Rule 10(b)(5) Does Not Apply to the Instant Case.

Rule 10(b)(5) applies to *securities*. It was promulgated by the S.E.C. to protect investors from misrepresentations made in the purchase and sale of security. It specifically provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the *purchase or sale of any security*. (emphasis added).

The fundamental purpose undergirding the Securities Acts is "to eliminate serious abuses in a largely unregulated securities market." *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 849 (1975). Because there was no "purchase or sale" of security in a "securities market", Rule 10(b)(5) does not apply to the instant case.

This case involves the mutual decision of two parties who attempted to create a new business. (SS ¶113-114). Defendant is neither the purchaser or seller of any security, and neither is the Plaintiff. Thus, Rule 10(b)(5) does not apply.

## B.    The Fraud Claim Must Fail Because there was No Actionable Misrepresentation, Intent, Reliance, or Damages.

Even *if* Rule 10(b)(5) were to apply, there are no triable issues of material fact supporting the requisite elements of the claim. To establish a claim under Rule 10b-5, plaintiffs must show (i) a material misrepresentation or omission by the defendant; (ii) scienter; (iii) connection between the misrepresentation or omission and the purchase or sale of a security; (iv) reliance upon the misrepresentation or omission; (v) economic loss; and (6) loss causation. *Retail Wholesale & Dep't Store Union Local 338 Retirement Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir.2017). Moreover, a claim under Rule 10(b)(5) must meet a "heightened pleading standard for securities fraud created by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u… Under PSLRA, plaintiffs must, among other requirements, specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *Retail Wholesale, supra*, 845 F.3d at 1271. Furthermore, the U.S. Supreme Court decided that proof of scienter—defined as "mental state embracing intent to deceive, manipulate,

1 or defraud"—is required in private damage actions under Rule 10b-5. *Ernst & Ernst v.*

2 *Hochfelder*, 425 U.S. 185 (1976). In other words, negligence alone will not result in Rule

3 10b-5 liability. *Id.*

4      In order to succeed on its claim under Rule 10(b)(5), thus, Plaintiff must meet the

5 burden of proving that Defendant intended (scienter) to misrepresent the legality of the

6 Company's structure, and that  Plaintiff was somehow damaged because he did not make

7 as much on his investment as he thought. The undisputed facts demonstrate that there is

8 no basis for finding any fraud or applicability/violation of Rule 10(b)(5).

9 **VIII.  CONCLUSION**

10      Based on the foregoing reasons, the Company formed by Plaintiff and Defendant

11 was the product of mutual mistake. While one of the parties has accepted the fact of his

12 mistake and dealt with the consequence of such mistake, the Plaintiff is attempting to use

13 judicial machinery to increase the return of his $80,000 investment through litigation

14 damages. As a matter of law, the Company was illegal, against public policy, and void ab

15 initio; thus, none of the counts based on California Corporations Code, Title 2.6, apply to

16 this case. Moreover, because Plaintiff has been made whole, with a full restitution of his

17 $80,000 plus more on top, there can be no damages in any of the counts. For all the

18 reasons detailed, the Court should grant summary judgment disposing the entire case in

19 favor of Defendant.

20

21

22 DATED:  December 22, 2017         MOUSAVI & LEE, LLP

23

24

25             By:     /s/ Amy A. Mousavi

26                    AMY A. MOUSAVI, ESQ.
                   Attorneys for Defendant, SAMER SANNOUFI,

27                    MD., aka SAM SANNOUFI, MD, an individual

28

**MOTION FOR SUMMARY JUDGMENT**

1    PROOF OF SERVICE

2    STATE OF CALIFORNIA          )
                                 ) ss:
3    COUNTY OF ORANGE            )

4         I am employed in the County of Orange, State of California. I am over the age of 18 and not
5    a party to the within action; my business address is 2020 Main Street, Suite 900, Irvine, CA 92614-
6    8203.

7         On December 22, 2017, I electronically filed Answer to Defendant's Notice of Motion and
     Motion for Summary Judgment, or in the Alternative, Summary Adjudication; Memorandum of
8    Points and Authorities with the Clerk of the United States District Court of California, using the
     CM/ECF system. The court's CM/ECF system will send an email notification of the filing and
9    following parties and counsel of record who are registered with the Court's CM/ECF system:

10   Roger L. Cohen, Esq.
     JABURG & WILK, PC
11   3200 N. Central Avenue, Suite 2000
     Phoenix, AZ 85012
12   Telephone: (620) 248-1000
     Attorney for Plaintiff
13

14   Stephen B. Mashney, Esq.
     MASHNEY LAW OFFICES, APC
15   335 N. Brookhurst Street
     Anaheim, CA 92801
16   Attorney for Plaintiff

17   ☒     **(BY ELECTRONIC SERVICE VIA CM/ECF SYSTEM)**
18         In accordance with the electronic filing procedures of this Court, service has been effected on
           the parties above, whose counsel of record are registered participants of the CM/ECF system.
19

20   ☒     **(FEDERAL)**
           I declare under penalty of perjury under the laws of the State of California that all the
21         foregoing is true and correct, and that I am employed at the office of a member of the car of
           this Court at whose direction service was made.
22

23         Executed on December 22, 2017, at Irvine, California.

24

25                                                    _____
                                                      Dorian Ledbetter
26

27

28

---

PROOF OF SERVICE
1