1  Roger L. Cohen, CA Bar No. 065489
   **Jaburg & Wilk, P.C.**
2  3200 N. Central Avenue, 20th Floor
   Phoenix, AZ 85012
3  602.248.1000

4  Attorneys for Plaintiff

5

6

7                        **U.S. DISTRICT COURT**

8       **CENTRAL DISTRICT OF CALIFORNIA (SOUTHERN DIVISION)**

9  Jamal Hamadah, an individual

10                  Plaintiff,              Case No. 8:17-cv-00132-CJC-JCG

11  v.                                      **RESPONSE TO MOTION FOR
                                            SUMMARY JUDGMENT**
12  Samer Sannoufi, MD, aka Sam
    Sannoufi, MD, an individual
13                  Defendant.              The Honorable Cormac J. Carney
                                            United States District Judge
14
                                            Hearing Date: January 22, 2018
15                                          Time: 1:30 p.m.
                                            Dept. 9B
16
                                            Trial: February 27, 2018, 8:00 a.m.
17

18

19

20

21

22

23

24

25

26

1

**TABLE OF CONTENTS**

Page

I.    PREFATORY STATEMENT: THE MOTION DOES NOT, UNDER ANY CIRCUMSTANCES, FULLY RESOLVE THE LITIGATION. ..............1

II.   MATERIAL FACTS .........................................................................................3

III.  THE ILLEGALITY OF THE PARTIES' BUSINESS VENTURE DOES NOT RESULT IN A WINDFALL TO DR. SANNOUFI, WHO ADMITS HE SHOULD HAVE KNOWN OF CALIFORNIA'S LAWS GOVERNING HIS PROFESSION...........................................................7

      A.   Plaintiff's Claims Are Governed by a Mixture of Arizona, California and Federal Law. ....................................................7

      B.   The Illegality of the Parties' Business Venture Must not Result in a Windfall to Dr. Sannoufi...............................................9

      C.   Nothing in the Motion Supports the Conclusion of "Mutual Mistake." ..................................................................13

      D.   Nothing in the Motion Supports the Theory that Dr. Sannoufi is Entitled to Summarily Declare the Company's Operating Agreement "Void ab Initio and Unenforceable" and Award Himself the Spoils of the Parties' Illegal Business Venture....................14

      E.   Dr. Sannoufi Is Not Entitled to Rescission. ...............................16

IV.   ISSUES OF FACT EXIST AS TO WHETHER DR. SANNOUFI BREACHED HIS FIDUCIARY DUTIES (COUNT ONE) .............................18

V.    ISSUES OF FACT EXIST AS TO WHETHER DR. SANNOUFI FAILED TO PROVIDE INFORMATION (COUNT TWO). .........................20

VI.   ISSUES OF FACT EXIST AS TO WHETHER DR. SANNOUFI IS LIABLE FOR IMPROPER DISTRIBUTION OF THE COMPANY'S ASSETS UNDER Cal. Corp. Code § 17704.05 and 17704.06 (COUNT THREE)........................................................20

VII.  ISSUES OF FACT EXIST AS TO WHETHER DR. SANNOUFI IS LIABLE FOR NEGLIGENT MISREPRESENTATION (COUNT FOUR) ...........................................................21

VIII. ISSUES OF FACT EXIST AS TO WHETHER DR. SANNOUFI IS LIABLE FOR UNJUST ENRICHMENT (COUNT SIX)..............................23

IX.   ISSUES OF FACT EXIST AS TO WHETHER DR. SANNOUFI IS LIABLE FOR FRAUD IN THE OFFERING AND SALE OF SECURITIES (COUNT SEVEN). ...............................................23

X.    CONCLUSION ...............................................................25

JABURG│WILK
Attorneys at Law

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4 *Chen v. L.A. Truck Centers, LLC*, 7 Cal. App. 5th 757, 767, 213 Cal. Rptr. 3d 142, 151
5    (App. 2017)........................................................................................................... 8

6 *De Zemplen v. Home Fed. Sav. & Loan Ass'n*,
   221 Cal. App. 2d 197, 205,34 Cal. Rptr. 334, 339 (App. 1963) ............................... 24

7 *Fergus v. Songer*,
8    150 Cal. App. 4th 552, 571, 59 Cal. Rptr. 3d 273, 289 (2007) ................................. 16

9 *Goldstein v. Lees*,
   46 Cal.App.3d 614, 622, 120 Cal.Rptr. 253(1975) ..................................................... 2

10 *Lathrop v. Healthcare Partners Medical Group*,
11    114 Cal.App.4th 1412, 1420-14(2004) .............................................................. 11, 12

12 *Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27, 37 (2011) ............................................................................................. 26

13 *Mosher v. Mayacamas Corp.*,
14    215 Cal. App. 3d 1, 4–5, 263 Cal. Rptr. 373, 375 (Ct. App. 1989) .......................... 15

15 *Mueller v. San Diego Entm't Partners, LLC*,
   2017 WL 3387732, at *4 (S.D. Cal. Aug. 7, 2017)................................................... 26

16 *Peterson v. Cellco P'ship*,
17    164 Cal. App. 4th 1583, 80 Cal. Rptr. 3d 316 (2008) .............................................. 25

18 *Provenz v. Miller*,
19    102 F.3d 1478, 1490 (9th Cir. 1996).......................................................................... 27

*Sharabianlou v. Karp*,
20    181 Cal. App. 4th 1133, 1144, 105 Cal. Rptr. 3d 300, 309 (2010) ........................... 19

21 *Standard Chartered PLC v. Price Waterhouse*,
22    190 Ariz. 6, 29, 945 P.2d 317, 340 (App.1996) ....................................................... 24

**Statutes**

23 15 U.S.C. § 78j(b)......................................................................................................... 26

24 17 C.F.R. 240................................................................................................................... 9

25 Cal. Bus. & Prof. Code § 2052 ........................................... 2, 10, 11, 15, 16, 17

26

JABURG|WILK
Attorneys at Law

i

Cal. Bus. & Prof. Code § 2052(a) ................................................................. 10, 11

Cal. Bus. & Prof. Code § 2052(b) ...................................................................... 11

Cal. Bus. & Prof. Code § 2286 ................................................................... 10, 11

Cal. Bus. & Prof. Code § 2400 ...........................................................2, 9, 10, 11

Cal. Bus. & Prof. Code § 2406 ........................................................ 11, 12, 15, 16

Cal. Bus. & Prof. Code § 2409 ............................................................................ 13

Cal. Bus. & Prof. Code § 2416 ........................................................ 11, 12, 15, 16

Cal. Bus. & Prof. Code § 2417 ............................................................................ 10

Cal. Civ. Code § 1577 ........................................................................................... 14

Cal. Civ. Code § 1578 ........................................................................................... 14

Cal. Civ. Code § 1588 ........................................................................................... 16

Cal. Civ. Code § 1598 ........................................................................................... 16

Cal. Civ. Code § 1599 ........................................................................................... 16

Cal. Civ. Code § 1688 ........................................................................................... 18

Cal. Civ. Code § 1689 ........................................................................................... 18

Cal. Civ. Code § 1691(b) .................................................................................. 1, 18

Cal. Civ. Code § 1692 ...................................................................................2, 7, 19

Cal. Civ. Code, § 13406(a) ................................................................................... 10

Cal. Corp. Code § 13401 ............................................................................... 10, 13

Cal. Corp. Code § 13406 ...................................................................................... 16

Cal. Corp. Code § 17701.01 ................................................................................. 14

Cal. Corp. Code § 17701.13 ................................................................................. 22

Cal. Corp. Code § 17704.05 ................................................................................. 23

Cal. Corp. Code § 17704.06 ................................................................................. 23

ii

JABURG|WILK
Attorneys at Law

Cal. Corp. Code § 17704.09 ............................................................................ 21

Cal. Corp. Code 13406(a) .............................................................................. 14

Cal. Corp. Code, § 13401.5 ............................................................................ 10

Cal. Corp. Code, § 13403 ............................................................................... 10

**Rules**

Federal Rules of Civil Procedure 41(c) ............................................................ 1

LR 37-2 ............................................................................................................ 3

iii

Whatever the ultimate merits of this case, there is no basis for summary judgment.  There are a myriad of disputed, material facts, supported by competent evidence, including the recent depositions of Plaintiff/Counterdefendant Jamal Hamadah and Defendant/Counterclaimant Samer Sannoufi, MD.  For the reasons set forth in the following Memorandum, it is requested that the Motion be denied and that the matter proceed to trial. This Response is supported by the following Memorandum and by the Statement of Genuine Disputes of Material Fact ("Hamadah's SOF").

## I.   PREFATORY STATEMENT: THE MOTION DOES NOT, UNDER ANY CIRCUMSTANCES, FULLY RESOLVE THE LITIGATION.

For purposes of the present Motion only, Mr. Hamadah agrees that the parties' dispute arises out of an investment in an illegal medical business venture.  But while the Motion is labelled "summary judgment," and a proposed Judgment purports to dismiss the entire case with prejudice, the pending Motion is actually one for *partial* summary judgment:  There remains pending a Counterclaim, filed by Dr. Samer Sannoufi, and claiming that the parties' agreement was rescinded.  Mr. Hamadah has answered the Counterclaim and does not consent to dismissal.  See Rule 41(c).  Dr. Sannoufi's claimed offer of rescission was defective and insufficient to satisfy the requirements of Civil Code § 1691(b), which requires, among other things, that a party seeking rescission must offer to "[r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise."  Specifically, Dr. Sannoufi received from Hamadah, in the form of the proceeds of Hamadah's investment, valuable property consisting of multiple medical practices and associated patient and insurance carrier relationships, and the potential proceeds to be generated by a sale to a person authorized to operate a medical practice under California law.  In addition, to the extent Dr. Sannoufi is entitled to rescission, Hamadah is entitled  to corresponding relief in the form of an equitable

JABURG|WILK
Attorneys at Law

1  adjustment under Civil Code § 1692.[1]  At minimum, this case must proceed to trial

2  regarding the nature and amount of the required equitable adjustment.

3       The only parties to this litigation are Dr. Sannoufi and Jamal Hamadah.

4  Dr. Sannoufi is a California doctor who promoted and solicited the illegal venture.

5  Dr. Sannoufi (1) initiated the transaction by soliciting Mr. Hamadah, an Arizona

6  resident and a personal friend with whom Dr. Sannoufi had had no prior business

7  dealings, to invest in a medical practice in California; (2) has engaged in a course of

8  conduct in blatant violation of the California Medical Practice Act, Business and

9  Professions Code §§ 2052 and Business and Professions Code § 2400; (3) has used his

10 own illegal conduct as a means of perpetrating a fraud against Mr. Hamadah; and (4)

11 continues to use his own illegal conduct as both a shield and sword to avoid the

12 consequences of his business dealings with Mr. Hamadah.  On the other side is

13 Mr. Hamadah, an individual investor having no background, experience or expertise in

14 the ownership or operation of medical practices and no familiarity with California law

15 pertaining to such a business.  English is not Mr. Hamadah's native language, and he

16 has no legal training, no knowledge of California law, and no ability to interpret legal

17 documents.

18       Dr. Sannoufi has refused to provide financial records and other information to

19 which Mr. Hamadah is entitled, by virtue of his status as a litigant and member of the

20

21 [1] Dr. Sannoufi has also, through the same attorney, filed a Third Party Complaint
   against the LLC owned equally by Dr. Sannoufi and Mr. Hamadah. Undersigned

22 counsel advised Dr. Sannoufi's attorney of the conflict of interest, *Goldstein v. Lees*, 46

23 Cal.App.3d 614, 622, 120 Cal.Rptr. 253(1975)(A corporation's legal adviser must
   refrain from taking part in controversies among shareholders as to its control, and when

24 his opinion is sought he must give it without bias or prejudice), and no action has been
   taken on the Third-Party Complaint, but it does remain pending and is not addressed in

25 the present Motion or form of Judgment.

26

18318-18318-00002\KMS\KMS\2959334.3

JABURG|WILK
Attorneys at Law

1  limited liability company that owns the medical practice.  Mr. Hamadah has repeatedly,

2  and unsuccessfully, demanded records and information, including records of payments

3  made to the company, payments to Dr. Sannoufi, a list of all insurance companies for

4  which Sannoufi was an in-network provider, and full and complete financial statements

5  of Dr. Sannoufi's other clinics which were the recipient of some of the payments[2].

6       Dr. Sannoufi insists that, because the underlying business venture is illegal,

7  Mr. Hamadah is entitled to nothing more than a return of his original $80,000.00

8  investment – which he claims was returned to Mr. Hamadah in the form of partner

9  draws – while Dr. Sannoufi benefits from the illegality – which he perpetrated – and

10  keeps the prospective profits and increased business value.  But under California law,

11  and in accordance with any equitable doctrine, this cannot be result, as it would allow

12  Dr. Sannoufi to benefit from the illegality, at the expense of his business partner, despite

13  that Dr. Sannoufi is a licensed physician, and thus charged with knowledge of the rules

14  pertaining to medical practice, while Mr. Hamadah is simply an innocent investor. To

15  avoid such an inequitable result, Mr. Hamadah is entitled to half the value of the

16  business at the time Dr. Sannoufi closed the clinic or, in the alternative, an order

17  requiring the business to be sold and the proceeds divided under Court supervision.

18  **II.   MATERIAL FACTS[3]**

19       The parties met when Mr. Hamadah visited Dr. Sannoufi in jail and offered him

20  sympathy, friendship, and financial assistance.  The present business venture arose after

21

22  [2] Mr. Hamadah has filed discovery papers in accordance with LR 37-2, in which
23  Dr. Sannoufi and has attorney have refused to participate, despite the requirements that
    the parties submit a "stipulation regarding discovery dispute."  The matter is scheduled
24  for hearing on January 25, 2018.
25  [3] All references are to the Additional Facts set forth in Hamadah's SOF and the Exhibits
    attached to Hamadah's SOF.

3

26  18318-18318-00002\KMS\KMS\2959334.3

1   Dr. Sannoufi was acquitted and released from jail, and went to Mr. Hamadah's jewelry

2   store "to thank him for being there."  (Sannoufi Depo, Ex. 2, pp. 129-130, 133, 135).

3       Dr. Sannoufi approached Mr. Hamadah in connection with the proposed

4   acquisition of an Urgent Care Clinic in Riverside, California. (Hamadah Depo, Ex. 1,

5   pp. 391-392).  At the time Dr. Sannoufi approached Mr. Hamadah, he and a friend (or

6   relative) Ghaida (sometimes spelled "Gayda") Shoora had been in communication with

7   MyUSACorporation.com regarding the formation of a California limited liability

8   company. (Hamadah Depo, Ex. 1, pp. 122-123, 147-149, 394-395).   Dr. Sannoufi

9   solicited Mr. Hamadah's involvement as an investor in the company to be formed to

10  own the clinic:

> He say he has clinic ready now he like.··He need money to
> buy this one.··He need partner, and he say, Jamal, I like -- I
> like you because you help me –

13  (*Id.*, p. 392). Dr. Sannoufi acknowledges that he caused the company to be formed and

14  offered an investment opportunity to Hamadah in the form of a membership interest.

15  Sannoufi demanded and expected to receive compensation, in the form of salary or

16  expense payments, for his services.  (Sannoufi Depo., Ex. 2, pp 55-57).

17      Mr. Hamadah ultimately agreed to invest $80,000.00 in exchange for a 50%

18  interest in the company.  (Hamadah Depo, Ex. 1, pp. 393).

19      Dr. Sannoufi represented to Mr. Hamadah that the business was legal:

> Q.· ·Did he tell you that what you were doing under the
> LLC documents was legal?
>
> A.· ·Legal.··Everything legal.
>
> Q.· ·Did he tell you that?
>
> A.· ·Yes.
>
> Q. Did you rely on that?

4

1          A. 100% .

2     (*Id.*, p. 384; see also pp. 385, 359-361, 382). Mr. Hamadah would not have invested in

3     the business if he knew it was illegal:

4          I don't want to go partners with him if it's not legal.

5     (*Id.*, p. 255).

6          Dr. Sannoufi further stated to Mr. Hamadah that in order for the transaction to be

7     legal, he would have to have 51% control of the company. (*Id.*, p. 139).  At the same

8     time he presented Mr. Hamadah with a handwritten document reflecting his 51%

9     control, which he and Mr. Hamadah signed.  A copy of that document has never been

10    provided to Mr. Hamadah, however.    Mr. Hamadah relied on Dr. Sannoufi's

11    representation that the agreement would be legal in proceeding with the transaction and

12    in making an investment in the company.  (*Id.*, pp. 359-360).

13         Dr. Sannoufi acknowledges that, when he became licensed to practice medicine

14    in California, he was obligated to comply with California law.  (Sannoufi Depo, Ex. 2,

15    pp. 250, 267-269).  He acknowledges further that he never looked on the medical board

16    website and never saw the "Guide to Laws Governing the Practice of Medicine," which

17    was available for download from the Board's website.  (*Id.*, p. 254).

18         Because Mr. Hamadah was providing money, the account with MyUSA was

19    opened in his name.   In addition, Mr. Hamadah received communications from

20    MyUSA.  However, Mr. Hamadah never engaged in communications to MyUSA and

21    provided no instructions or input regarding the company documents, all of which were

22    handled by Ms. Shoora.  (Hamadah Depo., Ex. 1, pp. 122-123, 147-149, 162-164, 394-

23    395).  In connection with the purchase of the clinic, Dr. Sannoufi retained an attorney

24    for limited purposes as stated in an email from the attorney, which did not include

25    reviewing the transaction for legality.  Mr. Hamadah had no communications with the

26

JABURG|WILK
Attorneys at Law

1  attorney but allowed his credit card to be used to pay the attorney's fee.  (*Id.*, pp. 178-

2  180).

3         Dr. Sannoufi represented to Mr. Hamadah, and the purchase agreement reflects,

4  that the sole asset being acquired was the PrimeCare contract.  (Ex. 19 to Hamadah's

5  Depo, Ex. 1; see also Ex. 1, p. 382).  Dr. Sannoufi represented to Mr. Hamadah that the

6  PrimeCare contract would produce monthly revenues and in addition would produce

7  bonuses of $75,000.00 every six months.  (*Id.*, pp. 107-108).

8         It was initially discussed that Dr. Sannoufi would receive a salary of $180,000.00

9  (the amount is disputed) and that profits after payment of expenses would be split 50/50.

10  (*Id.*, p. 123).  However, Dr. Sannoufi elected not to take a salary and instead took

11  compensation in the form of personal expenses.  (Sannoufi Depo, Ex. 2, pp. 55-57).

12  The company's accountant tracked the expenses and classified them as "non-K-1

13  earnings."  Dr. Sannoufi never advised the accountant that there was an unpaid amount

14  due him for accrued salary and the company's books did not reflect any such liability.

15  (Hager Decl. Ex. 3).

16         In fall, 2016, Dr. Sannoufi sent Mr. Hamadah a letter stating that the clinic's

17  lease had expired and that the landlord would not renew.  That letter did not mention

18  anything about the business being unlawful.  When Mr. Hamadah raised questions and

19  refused to sign a document dissolving the company, Dr. Sannoufi for the first time

20  advised Mr. Hamadah that the business was illegal.  (Hamadah Depo, Ex. 1, p. 247,

21  267, 273 – 275, 278).

22         Purportedly because the business was unlawful, Dr. Sannoufi shut down the

23  clinic and transferred the PrimeCare contract and the ongoing clinic operations to a new

24  company of which he is the sole owner.  The new company has the benefit of the

25  PrimeCare contract, revised to extend its term, and two of the three employees of the

26

1   clinic immediately went to work for Dr. Sannoufi's new company.  (Sannoufi Depo.,

2   Ex. 2, pp. 103-104, 105-107, 112-114).

3   **III.   THE ILLEGALITY OF THE PARTIES' BUSINESS VENTURE DOES NOT RESULT IN A WINDFALL TO DR. SANNOUFI, WHO ADMITS HE SHOULD HAVE KNOWN OF CALIFORNIA'S LAWS GOVERNING HIS PROFESSION.**

4

5          Dr. Sannoufi summarily concludes that (1) the business venture is illegal under

6   California law, (2) he therefore gets the clinic free and clear of Mr. Hamadah's interest,

7   and (3) the most Mr. Hamadah would be entitled to is reimbursement of his investment

8   funds, which he has already received in the form of interim draws. Under this approach,

9   of course, only Dr. Sannoufi benefits from the alleged illegality:  He walks away with

10  100% of the value of the parties' joint business venture, while Mr. Hamadah gets none

11  of the business and none of the profits. The assumptions built into Dr. Sannoufi's theory

12  require that the Court disregard federal securities laws; the negligent misrepresentations

13  in Arizona, where the misrepresentations occurred;  Dr. Sannoufi's personal conduct

14  and liability as a licensee; and adjustment of the equities required by Cal. Civ. Code §

15  1692.

16

17         **A.    Plaintiff's Claims Are Governed by a Mixture of Arizona, California and Federal Law.**

18         The only written contract between the parties is the Operating Agreement. (Ex. A

19  to Sannoufi Decl.).  But the assertion that the Operating Agreement calls for application

20  of California law is false.  (Motion, p. 10).  The Agreement includes references to the

21  limited liability company's formation in California, the Company's principal place of

22  business in Irvine, California, and the dissolution of the Company upon the occurrence

23  of an event causing dissolution of the company under the laws of California.  (Ex. A to

24  Sannoufi Decl., ¶¶1.1, 1.7, 1.4).  Otherwise, there is no reference to any governing state

25  law, and no venue, jurisdiction or choice of law provision.  Exhibit 1 to the Operating

26

7

Agreement identifies Dr. Sannoufi as the Chief Executive Manager, and lists Dr. Sannoufi's address in Gilbert, Arizona; Exhibit 2 to the Operating Agreement lists Mr. Hamadah and Dr. Sannoufi as the sole members of the Company, with Dr. Sannoufi's address in Gilbert, Arizona and Mr. Hamadah's address in Scottsdale, Arizona.  When the Operating Agreement was signed, both parties lived in Arizona; at all times, the Agreement contemplated that Mr. Hamadah's performance would be in Arizona.  Accordingly, unless the cause of action specifically refers to California law (Counts One, Two, Three), there is no valid reason to apply California law, and certainly no automatic application of California law.

Count Four (negligent misrepresentation) arises out of misrepresentations and material omissions made by Dr. Sannoufi to Mr. Hamadah prior to formation of the Company, and while both parties resided in Arizona.  Count Four therefore arose under, and is governed by, Arizona law.  See *Matanuska Val. Lines, Inc. v. Molitor*, 365 F.2d 358, 360 (9th Cir. 1966) (cases where jurisdiction is founded upon diversity of citizenship, the district courts are to apply the forum state's conflict of laws rules); *Chen v. L.A. Truck Centers, LLC*, 7 Cal. App. 5th 757, 767, 213 Cal. Rptr. 3d 142, 151 (App. 2017)(A different governmental interest analysis must be performed with respect to each particular issue; assuming the existence of a true conflict between states' laws and interests, the governmental interest test of conflicts of law looks to see which jurisdiction's interests would be more impaired if its policy were subordinated to the other jurisdiction's policy).

Count Seven (Fraud in the Offering and Sale of Securities – Rule 10(b)(5)) arises out of the purchase and sale of a security, and states a claim under SEC Rule 10(b) of the Securities Exchange Act of 1934, promulgated by the U.S. Securities and Exchange Commission, and codified at 17 C.F.R. 240.  This claim is governed by federal law.

**B.    The Illegality of the Parties' Business Venture Must not Result in a Windfall to Dr. Sannoufi.**

Medical Practice Act, Business and Professions Code § 2052 provides that the unlicensed practice of medicine, ***and*** the conspiracy or aiding or abetting the unlicensed practice of medicine are illegal and punishable by a fine, imprisonment, or both. Section 2400 provides that corporations and other artificial legal entities have no professional rights, privileges or powers.   The Medical Board of California website specifically states that the following types of medical practice ownership and operating structures are prohibited by these statutes: (1) Non-physicians owning or operating a business that offers patient evaluation, diagnosis, care and/or treatment, and (2) Physicians operating a medical practice as a limited liability company.   For purposes of these proceedings only, again, it is assumed that the latter statutes apply and that the business, as structured, was unlawful in form.

But that is only the beginning of the inquiry.   The next question is what  impact, if any, do the statutory prohibitions have on the equities involved and on the financial aspects of this civil case?

Citing Bus. & Prof. Code §§ 2052, 2286, 2400, 2417 and Corp. Code §§ 13401, 13401.5, 13403, Civ. Code, § 13406(a), Dr. Sannoufi asserts that "under California law, nonphysicians, like Plaintiff, are strictly prohibited from owning and/or controlling medical services."   This is not an accurate interpretation or application of the law or a proper characterization of Mr. Hamadah's position.   The statement also omits crucial details about Dr. Sannoufi's role and illegal actions.

Cal. Bus. & Prof. Code § 2052(a) provides that any person who practices or holds himself out as practicing "any system or mode of treating the sick or afflicted in this state, or who diagnoses, treats, operates for, or prescribes for any ailment, blemish,

9

1   deformity, disease, disfigurement, disorder, injury, or other physical or mental condition
2   of any person" without a valid license is "guilty of a public offense."  Mr. Hamadah did
3   not, in any way, practice or hold himself out as practicing medicine. Nor did he intend
4   to do so.  Without knowledge of any illegality or limitation on the ownership interest,
5   Mr. Hamadah entered into an agreement to own a membership interest in the Company,
6   which would own a medical clinic run solely by Dr. Sannoufi.  Dr. Sannoufi testified
7   that he was personally doing business as the Clinic.  (See Sannoufi Depo, Ex. 2, p. 12).
8   Dr. Sannoufi claims that he believed the business was legal because, as he
9   acknowledges, Mr. Hamadah "doesn't get in touch with any documents or any clinical
10  records or any HIPAA violation, then we're good."  (*Id.*, p. 105).

11      But the statutes cited in the Motion expressly implicate Dr. Sannoufi.  Bus. &
12  Prof. Code § 2052 also provides that "[a]ny person who conspires with or aids or abets
13  another to commit any act described in subdivision (a) is guilty of a public offense,
14  subject to the punishment described in that subdivision." To the extent that
15  Mr. Hamadah is guilty of practicing medicine without a license, under § 2052(a), his
16  business partner Dr. Sannoufi is guilty of conspiring with or aiding or abetting the
17  practice of medicine without a license under § 2052(b).  Moreover, Bus. & Prof. Code §
18  2286 provides that it is "unprofessional conduct for ***any licensee*** to violate, to attempt to
19  violate, directly or indirectly, to assist in or abet the violation of, or to conspire to
20  violate any provision or term of Article 18 (commencing with Section 2400), of the
21  Moscone-Knox Professional Corporation Act (Part 4 (commencing with Section 13400)
22  of Division 3 of Title 1 of the Corporations Code), or of any rules and regulations duly
23  adopted under those laws."  This statute, cited in Dr. Sannoufi's Motion, applies only to
24  Dr. Sannoufi, the licensee, and does not apply to Mr. Hamadah.

25
26                                        10

JABURG | WILK
Attorneys at Law

1          Citing Bus. & Prof. Code §§ 2406 and 2416 and *Lathrop v. Healthcare Partners*
2  *Medical Group*, 114 Cal.App.4th 1412, 1420-14(2004), Dr. Sannoufi argues that
3  California law prohibits an LLC from owning or operating a medical practice and that
4  "the Company's existence was a per se violation of law."  (Motion, p. 11).  Section
5  2406 provides that a medical corporation is a corporation that is authorized to render
6  professional services, so long as its shareholders, officers, directors and employees
7  rendering professional services are health care providers.  The Company is not a
8  medical corporation, and does not hold itself out as such; it is a limited liability
9  company.   Section 2416 provides that physicians may conduct their professional
10  practices in a partnership or group of physicians so long as a majority of the partners are
11  physicians and a partner who is not a physician shall not practice in the partnership or
12  vote on partnership matters related to the practice of medicine outside his scope of
13  practice.  Again, this statute applies to Dr. Sannoufi, the licensee, and has no bearing on
14  Mr. Hamadah.  The cited portions of *Lathrop* hold that physicians have been statutorily
15  authorized to conduct their medical practices in the form of a medical corporation,
16  group, or partnership as long as the shareholders or partners and the employees
17  rendering professional services are themselves licensed. Dr. Sannoufi's citations beg the
18  question whether the Company itself cannot operate as a limited liability company,
19  whether the Company is a "medical practice," and whether the parties' venture could
20  have been legally set up, using the Company as a limited liability company.  The most
21  commonly cited means, and that which would have been feasible under the
22  circumstances, is a management services organization (MSO). Mr. Hamadah and
23  Dr. Sannoufi could have set up a company that provides goods and services to a medical
24  practice owned by Dr. Sannoufi, who would set up a professional medical corporation
25  (PMC), either alone or with another physician. The MSO contracts with the PMC to
26

11

JABURG|WILK
Attorneys at Law

provide administrative and management services, such as subleasing office space and equipment (under written lease agreements), front desk services, back office administrative services including electronic data exchange, billing and collection, and staffing of unlicensed personnel.  None of these functions involve illegal ownership or profit sharing in the medical practice.  The MSO would have been compensated at fair market value for the lease rentals, the billing services, and other goods and services provided, without receiving any percentage or portion of profits from the medical practice. The MSO structure is specifically referred to on the California Medical Board website, and in educational materials on the website.

Citing Bus. & Prof. Code § 2409, Dr. Sannoufi claims that "an unlicensed person such as Plaintiff" is prohibited from receiving  income from the Company. (Motion, pp 11-12).   This is not an accurate interpretation or application of the law and omits prohibitions against Dr. Sannoufi's receipt of benefits in the business. The statute does not refer to "an unlicensed person."

Bus. & Prof. Code § 2409 provides that the "income of a medical and podiatry corporation attributable to professional services rendered while a shareholder is a disqualified person, as defined in Section 13401 of the Corporations Code, shall not in any manner accrue to the benefit of such shareholder or his or her shares in such a professional corporation." "Disqualified person" means a "licensed person who for any reason becomes legally disqualified (temporarily or permanently) to render the professional services that the particular professional corporation or foreign professional corporation of which he or she is an officer, director, shareholder, or employee is or was rendering."  Because Mr. Hamadah is not, and never has been, a "licensed person," the statute excluding income to a "disqualified person" does not apply to him. Dr. Sannoufi, on the other hand, is a "licensed person," who was legally disqualified to

1   render the professional services that the Company and the Clinic in which he was a

2   member and employee was rendering.

3          Dr. Sannoufi has been cited by the Medical Board of California for failure to

4   register the name of the Clinic and for violation of the professional practice statute, in

5   connection with practicing with the Company.  (Sannoufi Depo., Ex. 2, pp. 124-125).

6          Accordingly, the statute applies to Dr. Sannoufi, and not to Mr. Hamadah.

7          Citing Corp. Code 13406(a), Dr. Sannoufi argues that the Company's Operating

8   Agreement and the issuance of a 50% interest to Hamadah is illegal.  (Motion, p. 11).

9   The statute provides that shares of capital stock "in a professional corporation" may be

10  issued only to a licensed person and that "any shares issued in violation of this

11  restriction shall be void."   But the Company is a limited liability company, governed by

12  Corp. Code §§ 17701.01, et seq.; the Company is not, and does not purport to be, a

13  professional corporation.

14         **C.     Nothing in the Motion Supports the Conclusion of "Mutual Mistake."**

15         With no supporting law or argument, the Conclusion of the Motion asserts that

16  the Company was formed as a "product of mutual mistake."  (Motion, p. 21).  A mutual

17  mistake of law is defined as "[a] misapprehension of the law by all parties, all supposing

18  that they knew and understood it, and all making substantially the same mistake as to

19  the law[.]"  Civ. Code § 1578.  Mistake of fact justifying relief from the obligations of a

20  contract is defined in Civil Code section 1577 as follows:  "Mistake of fact is a mistake,

21  not caused by the neglect of a legal duty on the part of the person making the mistake,

22  and consisting in: 1. An unconscious ignorance or forgetfulness of *a fact past or*

23  *present*, material to the contract; or, 2. Belief in the *present exist*ence of a thing material

24  to the contract, which *does not exist*, or in the past existence of such a thing, which *has*

25  *not existed*." (Emphasis added.).  *Mosher v. Mayacamas Corp*., 215 Cal. App. 3d 1, 4–5,

26

JABURG|WILK
Attorneys at Law

263 Cal. Rptr. 373, 375 (Ct. App. 1989). Because Dr. Sannoufi admittedly had an obligation to know the law, and could have, but did not, review the Board website, he is not entitled to relief for any purported "mutual mistake."

**D.  Nothing in the Motion Supports the Theory that Dr. Sannoufi is Entitled to Summarily Declare the Company's Operating Agreement "Void ab Initio and Unenforceable" and Award Himself the Spoils of the Parties' Illegal Business Venture.**

Permeating the Motion is the theory that the Operating Agreement is "void ab initio and unenforceable," that all of Hamadah's legal claims therefore fail, and that Dr. Sannoufi is entitled to all the profits of the parties' business venture.  Citing Bus. & Prof. Code §§ 2052, 2406, 2416 and Corp. Code 13406(a), Dr. Sannoufi argues that the Operating Agreement "is void as a matter of law," because "all these code sections prohibit Hamadah from owning a medical practice." (Motion, p. 12).  Taken in order, nothing in these code sections on their face void the Operating Agreement; nor is there any law to suggest the Operating Agreement is "void ab initio."

Again, Bus. & Prof. Code § 2052 is inapplicable because there is no evidence to suggest that Mr. Hamadah practiced medicine.  Section 2406 is inapplicable because it refers to a medical corporation and the Company is a limited liability company and does not purport to be a medical corporation.   Section 2416 is inapplicable because it describes how physicians may conduct their professional practices in a group and applies to Dr. Sannoufi but not to Mr. Hamadah.  The word "void" does not appear in any of these statutes and nothing in the statutes suggests that the Operating Agreement would be void by virtue of §§ 2052, 2406, or 2416.

The only cited statute that includes the word "void" is Corp. Code § 13406, but this statute applies only to shares of capital stock in a professional corporation.  Because the Company is a limited liability company, the statute is inapplicable.

JABURG|WILK
Attorneys at Law

14

A contract may be declared void where it has a "single object" and that object is unlawful.  Civ. Code § 1598.  A contract may be declared partially void and partially valid, where it includes at least one lawful and one unlawful part.  See Civ. Code § 1599.  A contract may be voidable for want of consent, but ratified by subsequent consent.  Civil Code § 1588; *Fergus v. Songer*, 150 Cal. App. 4th 552, 571, 59 Cal. Rptr. 3d 273, 289 (2007).  The existence of the Company itself, as a limited liability company, is not illegal and, as set forth above, could have been structured differently  to run a legal management organization.  At minimum, issues of fact exist as to whether the Operating Agreement was enforceable as to a restructured company, voidable, partly void and partly valid, or void.  In no event, based on the evidence presented, is the Operating Agreement "void ab initio,"  to the benefit of Dr. Sannoufi and the detriment of Mr. Hamadah.

Given his status as a non-licensee having no prior knowledge or expertise in California law pertaining to the ownership and operation of medical practices, Mr. Hamadah's conduct cannot be characterized as involving intentional wrongdoing – or even negligence – on his part.  Likewise, given that his conduct did not include any involvement in patient care or operation of the Clinic, Mr. Hamadah's personal conduct did not constitute the unlawful practice of medicine by a non-licensee as proscribed by Business and Professions Code § 2052 and was not unlawful. Conversely, Dr. Sannoufi, as a licensee, is charged with knowledge of California law, including the explicit prohibition against corporate (and LLC) ownership; if there was illegality in the structure of the transaction, he is at fault and, as he acknowledges, had an obligation to comply with applicable law.  (Sannoufi Depo, Ex. 2, pp. 267-269).

Response to Motion for Summary Judgment

18318-18318-00002\KMS\KMS\2959334.3

1    More importantly, it is offensive and intolerable for a licensed professional, such

2 as Dr. Sannoufi, to assert his own illegal conduct as a basis for obtaining a financial

3 advantage in a business transaction with a non-professional.

4    **E.    Dr. Sannoufi Is Not Entitled to Rescission.**

5    While the Counterclaim is not the subject of this Motion, it is important to

6 recognize the essential futility of that portion of the case.

7    In his Counterclaim, Dr. Sannoufi alleges that, upon discovery of the illegal

8 business venture, he "immediately informed Hamadah, [and] rescinded the issuance of

9 Membership interest to Hamadah" and that the Counterclaim itself constitutes "further

10 notice of rescission…. And an offer to restore benefits received."  This claim remains

11 pending, and the evidence demonstrates that Dr. Sannoufi failed to properly rescind the

12 contract under Civil Code §§ 1688, et seq.

13    Civil Code § 1688 provides that a contract is extinguished by its rescission.  A

14 party to a contract may rescind for the seven enumerated reasons in Civil Code § 1689,

15 including that the contract is unlawful for causes which do not appear in its terms or

16 conditions, and the parties are not equally at fault.  Given that Dr. Sannoufi is the

17 licensed doctor and therefore should be charged with knowledge of the medical statutes

18 applicable to him, he would not be entitled to seek rescission under this provision.

19 While the contract is illegal and the parties are not equally at fault, it is Mr. Hamadah

20 who would be entitled to rescission under this statute, and not Dr. Sannoufi.

21    But even if Dr. Sannoufi is correct, and is entitled to rescission, he has not

22 properly sought that remedy.  Under § 1691(b), a party seeking rescission must "restore

23 to the other party everything of value which he has received from him under the

24 contract or offer to restore the same upon condition that the other party do likewise."

25 Dr. Sannoufi does not pretend to have complied with this provision, and cannot show

16

18318-18318-00002\KMS\KMS\2959334.3

JABURG|WILK
Attorneys at Law

1   that he has done so, as his theory of relief would leave the Company intact until the date

2   he allegedly discovered the illegality. (Sannoufi Depo, Ex. 2, pp. 221, 227, 228). Thus,

3   under his theory, Mr. Hamadah would remain, in the eyes of the State of California and

4   the IRS, a member of the Company for the 3½ year period of its operations, subject to

5   all legal and tax liabilities stemming from that status. While couched in terms of

6   "rescission," Dr. Sannoufi's proposed remedy is no such thing.

7        Further, if Dr. Sannoufi were entitled to rescission, Mr. Hamadah would still be

8   entitled to relief under the fourth paragraph of Civil Code § 1692, which states that "If

9   in an action or proceeding a party seeks relief based upon rescission, the court may

10  require the party to whom such relief is granted to make any compensation to the other

11  which justice may require and may otherwise in its judgment adjust the equities

12  between the parties." Cal. Civ. Code § 1692; see also *Sharabianlou v. Karp*, 181 Cal.

13  App. 4th 1133, 1144, 105 Cal. Rptr. 3d 300, 309 (2010), as modified on denial of reh'g

14  (Mar. 3, 2010)("The fundamental principle underlying [the rescission statute] is that 'in

15  such actions the court should do complete equity between the parties' and to that end

16  'may grant any monetary relief necessary' to do so"). Rescission is intended to restore

17  the parties as nearly as possible to their former positions and "to bring about substantial

18  justice by adjusting the equities between the parties" despite that the status quo cannot

19  be exactly reproduced. *Id.* To achieve this objective, Civil Code § 1692 provides that

20  "[a] claim for damages is not inconsistent with a claim for relief based upon rescission."

21  It further provides that the aggrieved party shall be awarded "complete relief," including

22  restitution and "consequential damages." Civ.Code § 1692. While Dr. Sannoufi claims

23  that Mr. Hamadah received the return of his investment by various distributions adding

24  up to approximately $80,000.00, Dr. Sannoufi's position fails to accurately and fairly

25  address the equities between the parties, and would not effectively restore or constitute

26

17

18318-18318-00002\KMS\KMS\2959334.3

JABURG|WILK
Attorneys at Law

sufficient return to the status quo to constitute rescission.  With respect to the distributions, they were just that – and not a return of Mr. Hamadah's investment – and Mr. Hamadah was taxed on 50% of the Company's income. Moreover, Mr. Hamadah would not be made whole or awarded complete relief, even if the tax returns were amended and the full $80,000.00 was returned intact, given that (a) the present transaction was entered into in lieu of other equally lucrative (and clearly lawful) investment opportunities, in the form of the potential purchase of a shopping center property in Chicago, Illinois, and/or the profits he would have earned from the Company, had it been properly set up in accordance with California law, and (b) the effect of rescission without compensation to Mr. Hamadah for the value of the Company's business would be to validate Dr. Sannoufi's unlawful an inequitable conduct at Mr. Hamadah's expense.  (See Hamadah Depo, Ex. 1, p. 107).

Once again, and aside from the issues precluding summary judgment on the Complaint, this case must proceed to trial on the Counterclaim.

## IV.   ISSUES OF FACT EXIST AS TO WHETHER DR. SANNOUFI BREACHED HIS FIDUCIARY DUTIES (COUNT ONE)

Dr. Sannoufi, on the basis of his attorney's Declaration, purports to construe Count One as pertaining to "alleged misrepresentations regarding the down-payment amount, the legality of the LLC structure, or estimated profits happened prior to the formation of the Company, to induce Plaintiff's investment in the Company." Statement of Uncontroverted Facts ¶13. Aside from counsel's lack of competency to testify to the intention of Plaintiff's pleadings, this characterization is simply incorrect.

A member owes to a member-managed limited liability company and other members of the company certain fiduciary duties of loyalty and care, including (1) to account to the company and hold as trustee for it any profit or benefit derived from the

JABURG|WILK
Attorneys at Law

use of the company property, (2) to refrain from dealing with the company as a person having an interest adverse to the company, and (3) to refrain from competing with the company in the conduct or winding up of the activities of the company.  Corp. Code § 17704.09.   A member's duty of care to a limited liability company and the other members is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct or a knowing violation of the law.  *Id.*   A member shall discharge his duties and exercise his rights consistent with the obligation of good faith and fair dealing.  *Id*.

Based on his deposition testimony, there is competent evidence that Dr. Sannoufi violated Corp. Code § 17704.09, in that, among other things, he (1) closed the Clinic, and diverted all the Company's assets to his own, solely-owned business; (2) caused the primary asset of the Company – the PrimeCare Capitation Contract – to be transferred to himself for use in his new business; (3) caused the business of the clinic, including two of its three employees, to be transferred intact to his new company as a going concern, (Sannoufi Depo, Ex. 2, pp. 103-104, 106-107, 112-114); (4) failed to comply with the law or at least to familiarize himself with applicable laws pertaining to the corporate practice of medicine, (*Id*., pp. 267-269); (5) failed to take reasonable steps to determine the lawfulness of the proposed clinic business prior to entering into any contracts with Hamadah and allowing Hamadah to become an investor in the Company and the Clinic; (6) failed to look on the medical board website to see if there is a guide to the laws governing the practice of medicine in California, (*Id.,* p. 254), and therefore never reviewed the "Guide to Laws Governing the Practice of Medicine," which is available for download from the Board's website and failed to look at applicable "bylaws" (sic) (*Id*., p. 255); (8) failed to have counsel review the lawfulness of the transaction (*Id*., p. 105; *Id*., Ex. 38).

19

18318-18318-00002\KMS\KMS\2959334.3

**V.    ISSUES OF FACT EXIST AS TO WHETHER DR. SANNOUFI FAILED TO PROVIDE INFORMATION (COUNT TWO).**

A manager or member in possession of the requested information is obligated, upon request of a member, for purposes reasonably related to the member's interest as a member, promptly to deliver, in writing, to the member a copy of the information required to be maintained by paragraphs (1), (2), and (4) of subdivision (d) of Cal. Corp. Code § 17701.13, and the Operating Agreement.

A member has the right, upon reasonable request, for purposes reasonably related to his interest as a member, to inspect and copy any records required to be maintained pursuant to Cal. Corp. Code § 17701.13.

Based on Dr. Sannoufi's deposition testimony and the Declaration of the Company accountant, there is competent evidence that Dr. Sannoufi violated § 17701.13: (1) Hamadah repeatedly requested that Dr. Sannoufi provide form 1099s showing the amounts paid by various health insurance carriers to Dr. Sannoufi or the Company, and Dr. Sannoufi refused to provide them to Hamadah or the Company's accountant (Hamadah Depo., Ex. 1, p. 379; Hager Decl. ¶4); (2) the accountant was therefore unable to reconcile bank deposits with gross payments.  (Hager Decl. ¶4).

**VI.    ISSUES OF FACT EXIST AS TO WHETHER DR. SANNOUFI IS LIABLE FOR IMPROPER DISTRIBUTION OF THE COMPANY'S ASSETS UNDER CAL. CORP. CODE § 17704.05 AND 17704.06 (COUNT THREE)**

A limited liability company is not permitted to make a distribution if after the distribution either of the following applies: (1) the limited liability company would not be able to pay its  debts as they become due in the ordinary course of the limited liability company's activities; (2) the limited liability company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the limited liability company were to be dissolved, wound  up, and terminated at the time of

20

JABURG|WILK
Attorneys at Law

JABURG|WILK
Attorneys at Law

1  the distribution, to satisfy the preferential rights upon dissolution, winding up, and

2  termination of members whose preferential rights are superior to those of persons

3  receiving the distribution.  Cal. Corp. Code § 17704.05.  If a manager of a manager-

4  managed limited liability company consents to a distribution in violation of § 17704.05,

5  the manager is personally liable to the company for the amount of the distribution that

6  exceeds the amount that could have been distributed without violation of the statute.

7  Cal. Corp. Code § 17704.06.

8      Dr. Sannoufi, as manager of the Company, made distributions that violated the

9  foregoing statutes, to Mr. Hamadah's detriment. He testified that his discovery that the

10  Company was purportedly illegal gave him the right, in substance to terminate the

11  Company, close the Clinic, and divert all the Company's assets to his own, solely-

12  owned business. Dr. Sannoufi caused the primary asset of the Company – the

13  PrimeCare Capitation Contract – to be transferred to himself for use in his new

14  business, and caused the business of the clinic, including two of its three employees, to

15  be transferred intact to his new company as a going concern.  (Sannoufi Depo, pp. 103-

16  104, 106-107, 112-114).   The form 1099 reflects that payments were made from

17  PrimeCare to Dr. Sannoufi, even though the contract was with the Company. (*Id.*, p.

18  15).  Dr. Sannoufi testified that he did not instruct PrimeCare to issue the 1099 in 2016

19  to himself rather than to the Company, but acknowledges that the 1099 shows the

20  amount paid to Dr. Sannoufi for that year was $146,570.24, covering the payments for

21  the period from January 1, 2016 until the Clinic was shut down.  (*Id.*, pp. 16-17).

22  **VII.   ISSUES OF FACT EXIST AS TO WHETHER DR. SANNOUFI IS
      LIABLE FOR NEGLIGENT MISREPRESENTATION (COUNT FOUR)**

23

24      One who, in the course of his business, profession or employment, or in any

25  other transaction in which he has a pecuniary interest, supplies false information for the

26

21

guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Standard Chartered PLC v. Price Waterhouse,* 190 Ariz. 6, 29, 945 P.2d 317, 340 (App.1996) (quoting Restatement (Second) of Torts § 552(1) (1979))[4].

Competent evidence shows that Dr. Sannoufi made misrepresentations and material omissions to Mr. Hamadah in the course of his business and for the guidance of Mr. Hamadah in his business transactions, and that Mr. Hamadah is a person whose benefit and guidance Dr. Sannoufi intended to supply the information. Again, Dr. Sannoufi understood that he was obligated to comply with California law and failed to determine the lawfulness of the proposed clinic business prior to entering into contracts with Hamadah and allowing Hamadah to become an investor in the Company and the Clinic. (Sannoufi Depo, Ex. 2, pp. 250, 255, 267-269, 254, Ex. 41 to his Depo). Dr. Sannoufi, as a California-licensed physician, is deemed at all times to have had knowledge of the basics of California law pertaining to the corporate practice of medicine.

Mr. Hamadah's deposition testimony demonstrates that Dr. Sannoufi represented to him that the business venture was legal and that he relied on those representations:

> Q.   But I just want to make clear, did Dr. Sannoufi represent to you that under the -- what you were doing under the purchase agreement was legal?
>
> A.   Legal.
>
> *Q.   Did he tell you that what you were doing under the LLC documents was legal?*

---

[4] If the Court finds that California law applies, the standard is comparable. *De Zemplen v. Home Fed. Sav. & Loan Ass'n*, 221 Cal. App. 2d 197, 205,34 Cal. Rptr. 334, 339 (App. 1963).

JABURG|WILK

Attorneys at Law

1    *A.   Legal.  Everything legal.*

2    Q.   Did he tell you that?

3    A.   Yes.

4    (Hamadah depo., p. 385(emphasis added); see also Hamadah depo., pp. 359-361, 382).

**VIII.   ISSUES OF FACT EXIST AS TO WHETHER DR. SANNOUFI IS LIABLE FOR UNJUST ENRICHMENT (COUNT SIX).**

The elements of a claim for unjust enrichment are the receipt of a benefit and the unjust retention of the benefit at the expense of another. *Peterson v. Cellco P'ship,* 164 Cal. App. 4th 1583, 80 Cal. Rptr. 3d 316 (2008). This claim was pled in the alternative to Hamadah's allegations elsewhere in the FAC, in the event the Court finds that no enforceable Agreement has ever been in effect between Hamadah and Sannoufi.

Dr. Sannoufi has received and continues to receive property and distributions properly belonging to Hamadah, in the form, among other things, of the profits and proceeds of the Clinic. Dr. Sannoufi has been enriched by the receipt of the above property and distributions, and the proceeds thereof. Dr. Sannoufi's unjust retention of the property and distributions, and the proceeds thereof are at the expense of Hamadah. It would be unconscionable and inequitable to permit Dr. Sannoufi to retain and use for his benefit the foregoing property and distributions without compensation to Hamadah.

**IX.   ISSUES OF FACT EXIST AS TO WHETHER DR. SANNOUFI IS LIABLE FOR FRAUD IN THE OFFERING AND SALE OF SECURITIES (COUNT SEVEN).**

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for "any person ... [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or ... for the protection of investors." 15 U.S.C. § 78j(b). Rule

23

18318-18318-00002\KMS\KMS\2959334.3

JABURG|WILK
Attorneys at Law

10b–5 implements this provision by making it unlawful for any person "[t]o employ any device, scheme, or artifice to defraud" or "make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading" or "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(a), (b), & (c).

To state a securities fraud claim under § 10(b) of the 1934 Act and Rule 10b-5, a plaintiff must show (1) a material misrepresentation or omission, (2) scienter, (3) in connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011); *Mueller v. San Diego Entm't Partners, LLC*, 2017 WL 3387732, at *4 (S.D. Cal. Aug. 7, 2017). Plaintiffs can establish scienter by proving either actual knowledge or recklessness. *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996). Scienter can be established by direct or circumstantial evidence. *Id.*

Dr. Sannoufi represented to Mr. Hamadeh that the Clinic would receive payments from PrimeCare of $14,000.00/month plus semi-annual bonuses. (Hamadah Depo, pp. 348-349). Dr. Sannoufi made the representations in Arabic, in, as Mr. Hamadah says "my language." (*Id.*). Dr. Sannoufi expressly represented that the transaction was legal and Mr. Hamadah accordingly agreed to the investment. (Hamadah depo., p. 385; see also Hamadah depo., pp. 359-361, 382). The facts here are sufficient, at minimum, to justify an inference of reckless conduct.

The transaction between Dr. Sannoufi and Hamadah involved the purchase and sale of a security, in the form of a membership interest in the Company (the "Membership Interest"), in that Hamadah was induced to, and did, invest money (a) to

24

be used in a common enterprise, i.e. the Company, (b) with a reasonable expectation of profits, and (c) with such profits to be derived entirely or primarily from the entrepreneurial and managerial efforts of Sannoufi.

In connection with the purchase and sale of the Membership Interest, Dr. Sannoufi (a) employed a device, scheme or artifice to defraud, (b) made untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaged in an act, practice, or course of business which operates or would operate as a fraud or deceit upon Mr. Hamadah. As a direct and proximate result of Dr. Sannoufi's acts and omissions, Mr. Hamadah has suffered damages in the form of loss of his investment and lost investment opportunities.

## X.    CONCLUSION

For the reasons set forth above and as supported by the depositions of Mr. Hamadah and Dr. Sannoufi and the Statement of Genuine Disputes of Material Fact, there are a myriad of disputed material facts. It is therefore requested that the Court deny the Motion for Summary Judgment.

DATED this 5th day of January, 2018.

**Jaburg & Wilk, P.C.**

*/s/ Roger L. Cohen*
Roger L. Cohen
Attorneys for Plaintiff

25

Response to Motion for Summary Judgment

18318-18318-00002\KMS\KMS\2959334.3

# CERTIFICATE OF SERVICE

**STATE OF ARIZONA, COUNTY OF MARICOPA**

I am employed in Maricopa County, State of Arizona, I am over the age of 18 years and not a party to the action; my business address is 3200 N. Central Avenue, #2000, Phoenix, AZ 85012

On the below date, I electronically filed the Response to Motion for Summary Judgment with the Clerk of the United States District Court for the Central District of California, using the CM/ECF system.  The Court's CM/ECF system will send an email notification of the filing to the following party and counsel of record who are registered with the Court's CM/ECF system:

Amy A. Mousavi
MOUSAVI LAW GROUP, APC
2020 Main Street, Suite 900
Irvine, CA 92614
Attorney for Defendant

Stephen Mashney
Mashney Law Offices
335 N. Brookhurst St.
Anaheim, CA 92801
Co-Counsel for Plaintiff

☒ **(BY ELECTRONIC SERVICE VIA CM/ECF SYSTEM)**
In accordance with the electronic filing procedures of this Court, service has been effected on the party above, whose counsel of record is a registered participant of the CM/ECF, via electronic service through the CM/ECF system.

☒ **(FEDERAL)**
I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the car of this Court at whose direction the service was made.

Executed on the 5th day of January, 2018, at Phoenix, Arizona.

*/s/ Joy J. Brown*

18318-18318-00002\KMS\KMS\2959334.3