Amy A. Mousavi, SBN 228388
Mousavi & Lee, LLP
2020 Main Street, Suite 900
Irvine, California 92614
Telephone (949) 864-9667
Facsimile (949) 622-8980

Attorneys for Defendant, SAMER SANNOUFI, MD.,
aka SAM SANNOUFI, MD, an individual,

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA (SOUTHERN DIVISION)

| | |
|---|---|
| JAMAL HAMADAH, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SAMER SANNOUFI, MD., aka SAM SANNOUFI, MD, an individual,<br><br>Defendant. | Civil Action No. 8:17-cv-00132 CJC (JCGx)<br><br>The Honorable Cormac J. Carney<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY AJUDCIATION**<br><br>[Concurrently filed Evidentiary Objections to the Declaration of Coleen Hager, Supplemental Declaration of Amy A. Mousavi, and Supplemental Declaration of Samer Sannoufi]<br><br>Date: January 22, 2018<br>Time: 1:30 p.m.<br>Dept.: 9B<br><br>Complaint Filed: January 25, 2017 |

There is very little by way of "evidence" in Plaintiff's Opposition to Defendant's

Motion for Summary Judgment, or in the Alternative, Summary Adjudication. Discovery

in this matter has been cut-off, and Plaintiff cannot create any additional purported

1    evidence to rebut the uncontroverted evidence presented by Defendant's Motion.[1]

2    Plaintiff's Opposition was Plaintiff's unique opportunity to present any and all persuasive

3    evidence to support his case. So if there were any evidence supporting Plaintiff's claims,

4    this was the time to present it.  However, Plaintiff fails to show any genuine dispute as to

5    facts material to his claims. What Plaintiff's Opposition does contain are uncited "facts"

6    making conclusory statements, and irrelevant claims intended to confuse the Court. Once

7    the noise is removed, this Motion boils down to a medical practice that was illegal in and

8    from its creation, Plaintiff's investment of $80,000 in that medical practice, and Plaintiff's

9    return of more than $98,000 from that medical practice. All of these crucial facts are

10   admitted by Plaintiff. (See, Opp. 9:10-12, Plaintiff's Statement of Genuine Dispute of

11   Material Fact ("Plaintiff's Statement") ¶56, and Plaintiff's Statement ¶59).

12   **I.       THE COMPANY WAS UNLAWFUL.**

13           The Walk-In Urgent Care and Family Practice Clinic LLC (the "Company") was

14   illegal in its formation, structure and ownership. This is admitted by Plaintiff. (Opp.1:9-

15   10, "For purposes of the present Motion only, Mr. Hamadah agrees that the parties'

16   dispute arises out of an investment in an illegal medical business venture"; Opp. 9:10-12,

17   "For purposes of these proceedings only, again, it is assumed that the latter statutes apply

18   and that the business, as structed, was unlawful in form"). To avoid any confusion on the

19   matter, the Company was illegal *per se* because (1) a medical practice cannot be formed

20   as a Limited Liability Company, (2) a non-licensed person cannot own shares of a

21   medical practice. (See, Defendant's Statement of Uncontroverted Facts and Conclusion

22   of Law filed with Motion ("SS"), ¶¶4-5).

23

24   _____

25   [1] Plaintiff's Opposition refers to a late discovery motion filed by Plaintiff. (See, Footnote 2, Page 3 of Plaintiff's Opposition). That discovery motion has been denied on January 10, 2018, by

26   Magistrate Judge Jay C. Gandhi with the related hearing date vacated. (Exhibit Q, to Supp. Mousavi Decl. ¶5). As it currently stands, thus, there is no more discovery to be done in this

27   matter.

28

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1       In relation to this litigation, Plaintiff filed a complaint against Defendant with the

2  Medical Board of California. The Medical Board agreed with Defendant's position that

3  the Company was illegal. (Exhibit T, to Supp. Sannoufi Decl.) In this letter, the Medical

4  Board, in clear language, states "non-physicians are strictly prohibited from *owning*

5  and/or controlling physician services in California." *Id*. The letter continues to state that

6  "physician(s) operating a medical practice as a 'limited liability' entity is a prohibited

7  practice ownership and operating structure. *Id*.

8       Moreover, the Articles of Organization for the Company, which indicates that the

9  Company was an LLC[2], states "LLCs may not provide 'professional services,' as defined

10  by California Corporations Code sections 13401(a) and 13401.3." (Exhibit U, to Supp.

11  Sannoufi Decl.) Corp. Code §13401(a) defines "professional services" as any type of

12  professional services requiring a license under the Business and Professions Code, such

13  as a medical doctor.

14       The Company's Operating Agreement's singular objective was to form an LLC

15  with Defendant and Plaintiff, a non-physician, to operate a medical practice in California.

16  (Exhibit A to Sannoufi Decl.) Because the "single object" of the Company was unlawful,

17  the Operating Agreement is void under Civ. Code §1598. Any claims premised on the

18  existence of a valid LLC, thus, fails as a matter of law.

19       A.    <u>Count One for Breach of Fiduciary Duty Fails as Matter of Law</u>. Because

20  the Company was illegal from its inception, and any Operating Agreement void ab initio

21  as a matter of law, Corp. Code §17704.09 does not apply. Plaintiff's Opposition provides

22  no counter-authority, but rather admits the illegality of the Company. Moreover,

23  Plaintiff's Opposition contains nothing more than conclusory allegations that Defendant

24  _____

25  [2] Plaintiff claims that the parties *could have* formed a lawful Management Services Organization
   (MSO), rather than an LLC. What the Company could have been, however, is irrelevant to what

26  the Company actual was. The parties *could have* also done a myriad of other things, including not
   entered into this venture at all. The point is that the Company was formed as an LLC. This is

27  undisputed. (Plaintiff's Statement ¶40).

28

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1  diverted assets, transferred the Primecare contract, and hired the same employees.

2  (Opp.19:11-15).

3        The problem is that these conclusory allegations are not supported by the source

4  citations provided. Defendant rather testified that he had to get a *renewed* Primecare

5  contract once the Company's operation closed, because Primecare contracts are location

6  and physician-specific. (Supp. Sannoufi Decl. ¶3).  Also, nobody owned the patients or

7  patient relationships, as patients can choose to see any physician regardless of any

8  Primecare contract. (Sannoufi Depo., 107:8-23, Exhibit 2 to Plaintiff's Opposition). Also

9  problematic is that there is no mention of taking employees anywhere in the cited

10 testimony. Lastly, none of the conclusory allegations are breaches of fiduciary duty

11 specifically enumerated under the language of Corp. Code §17704.09.

12       B.      Count Two for Failure to Provide Information Fails as Matter of Law. Like

13 all the other Counts based on the existence of a valid Company, this Count fails as a

14 matter of law because the Company was illegal and void from the start. Moreover, the

15 only information the Opposition claims as having requested and never received are

16 Defendant's 1099s. (Opp. 20:10-15). The "competent evidence" provided in support of

17 this claim is Plaintiff's own deposition testimony where he and his counsel claim to have

18 never received 1099s. (Hamadah's Depo., 379:11-25). Although the Opposition claims to

19 have "repeatedly requested" the 1099s, there is no citation to any source actually

20 supporting that contention. There is also no claim as to when, where, and how Plaintiff

21 made such requests.

22       The evidence rather shows that 1099s were provided to Plaintiff's counsel as part

23 of Defendant's disclosures in this case on June 23, 2017 via email, a copy of which has

24 been retained by Defendant's counsel and attached hereto.

25       C.      Count Three for Improper Distributions Fails as Matter of Law. According

26 to Plaintiff's own evidence and admission, Defendant received no distributions between

27 2013-2016 when the Company was in operation. First, a close review of Plaintiff's

28 Opposition on this Count reveals absolutely no discussion of any actual distributions

4

received by Defendant. (Opp. 21:8-21). It repeats Plaintiff's unsupported contention regarding the Primecare contract, and 1099 payments made by Primecare. *Id*. Neither the Primecare contract nor payments from a third-party vendor is a company "distribution" under Corp. Code §17704.05. Plaintiff provides no authority saying otherwise.

Second, Plaintiff's own accountant, who submitted a declaration in support of Plaintiff, states under penalty of perjury that the money Defendant received from the Company was "professional fees" paid by the Company for Defendant's services in lieu of his promised salary, and the amounts reported in the annual K-1s reflected "income (loss)," not "distributions. (Hager Decl. ¶¶9, 12).[3] Thus, even according to Plaintiff's own

---

[3] The Declaration of Coleen Hager submitted with Plaintiff's Opposition ("First Hager Declaration") is troublingly inconsistent with an earlier declaration signed by Ms. Hager ("Second Hager Declaration"), which was produced as part of Plaintiff's disclosures in this case. (Exhibit S, to Supp. Mousavi Decl., ¶7). In one of the worst demonstrations of ethical flexibility, Ms. Hager changes her testimony to suit the at-the-time needs of Plaintiff's counsel. For example, in the First Hager Declaration, Ms. Hager declared under penalty of perjury that Plaintiff's contribution in the Company was $90,000. (Exhibit S, ¶5). This was in line with Plaintiff's counsel's contention earlier in the case that Plaintiff contributed $90,000. Later in the case, during Plaintiff's deposition, Plaintiff slipped and admitted that he had only contributed $80,000 to the Company, which was Defendant's position all along. (Supp. Mousavi Decl., ¶3). After this deposition, the Second Hager Declaration reflects that Plaintiff only contributed $80,000 in the Company. (Exhibit 3, ¶5, to Plaintiff's Opposition).

Additionally, Ms. Hager's claim that the expenses incurred by the business are all attributable to Defendant's "personal expenses" are not supported by any documents, including tax returns for 2013-2016. (Second Hager Decl., Exhibit 3, ¶9, to Plaintiff's Opp.; Supp. Mousavi Decl. ¶4). In fact, none of the tax returns pre-dating this lawsuit (2013-2015) show any "re-classification" of these alleged "personal expenses" to "professional fees" paid to Defendant. (Supp. Mousavi Decl. ¶4). Rather, all of these "personal expenses" were previously classified by Ms. Hager as "business expenses" in her preparation of the Company's 2013, 2014, and 2015 tax returns. (Supp. Mousavi Decl. ¶4). No amended tax returns showing "re-classification" of "personal expenses" to "professional fees" have been exchanged or produced in this case either. (Supp. Mousavi Decl. ¶4). All of the purported "re-classification" occurred after this litigation ensued. (Supp. Mousavi Decl. ¶4). In light of these blatant inconsistencies and lack of documentary support for matters that should be recorded in the course of her normal duties, Ms. Hager's credibility is highly questionable. Notwithstanding, the unreliability of Ms. Hager's declaration(s), her statements disprove the contention that Defendant received any distributions, let alone "improper" distributions under the Code.

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1  accountant, Defendant received no distributions from the Company, simply his promised

2  wages and "income" which are not "distributions". (Hager Decl., ¶12).

3  　　　　Third, the payments from Primcare as reflected on the 1099s are not distributions

4  by the Company. These are payments from a third-party vendor to Dr. Sannoufi and the

5  company for Dr. Sannoufi's services rendered. (Opp. 21:16-17). Thus, these are not

6  company "distributions" within Corp. Code §17704.05. Furthermore, the Primecare

7  payments reflected on the 1099s were deposited directly into the Company's bank

8  account (Supp. Sannoufi Decl., ¶3), so these amounts were received by the Company, not

9  Defendant personally.

10  **II.     NO GENUINE DISPUTE OF MATERIAL FACT HAS BEEN**

11  **PRESENTED**.[4]

12  　　　　Plaintiff cannot and does not meaningfully dispute any of the material facts set

13  forth in Defendant's Statement of Uncontroverted Facts and Conclusions of Law ("SS").

14  As a demonstration of the nature of Plaintiff's objections to Defendant's SS, in Plaintiff's

15  Statement, Plaintiff disputes Defendant's SS ¶¶7, 8, 46, 47, 50, 51, 102, 103, 104, 107,

16  and 108, because the documents in question were "DocuSigned" as opposed to simply

17  "signed." (See, Plaintiff's Statement). DocuSign is an electronic signature just as valid

18

19

---

20  [4] None of the "Additional Material Facts" presented by Plaintiff's Statement are "material."
21  Specifically, Plaintiff's Statement ¶¶121 – 124, 144, and 145 have no bearing on any of
    Plaintiff's claims. Plaintiff's Statement ¶¶121 – 125 are also disputed, but again, they are
22  immaterial to the claims raised by Plaintiff in this matter. Plaintiff's Statement ¶126 includes two
    sentences, the first of which has no source citation and is disputed. Plaintiff's Statement ¶128 is
23  unequivocally disputed, (SS ¶43), but it not a determining factor for this Motion. Plaintiff's
    Statement ¶¶130 – 131, 136 – 141 are disputed, but again, do not affect the outcome of summary
24  judgment. Plaintiff's Statement ¶134 is disputed by incontrovertible documentary evidence.
    (Exhibits H through L, to Sannoufi Decl.) Plaintiff's Statement ¶135 is disputed by
25  uncontroverted documentary evidence. (Exhibit 38, to Sannoufi Depo., attached as Exhibit 2 to
    Plaintiff's Opp.)  Plaintiff's Statement ¶142 is disputed and unsupported by the source citation
26  provided by Plaintiff. Plaintiff's Statement ¶143 is disputed, as Plaintiff admits to having
    received more than $98,000 from the Company. (Plaintiff's Statement ¶117).
27

28

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

and legally recognized as any handwritten signatures. (15 U.S.C. Sec. 7001 et. seq.) Interestingly, Plaintiff does not actually deny having signed the documents in question.

A.     <u>Plaintiff Has No Evidence of Misrepresentation or Scienter</u>. It is undisputed that Defendant, Dr. Sannoufi, is a medical doctor, not a lawyer. He is trained in the practice of medicine, not the Business and Professions Code or the Corporations Code. Plaintiff cites no authority supporting his contention that a medical doctor is legally obligated to be familiar with such legal code sections. It is also undisputed that Dr. Sannoufi had successfully sold a medical practice in Arizona to a non-physician without issue, and that a California attorney reviewed and approved the legality of the purchase of the Company at issue. (Sannoufi Depo. Exhibit 2 to Opposition, 105:3-25).

The undisputed facts are as follows: Defendant had no experience with the nuances in the difference between Arizona and California law; Defendant actively hired a California lawyer to review the transaction at issue, and relied on that attorney's advice. (SS ¶41, ¶53). The only rebuttal "evidence" provided by the Plaintiff is the self-interested words of Plaintiff himself that Defendant said the venture was legal. (Opp. 22:19-:23-3). Not much else is provided by way of context or persuasion. This was the opportunity for Plaintiff to showcase his facts and merits, and he was unable to provide anything else besides a couple of lines of his own deposition testimony being questioned by his own counsel.[5] Plaintiff has offered no evidence creating a genuine dispute as to the fact that Defendant did not misrepresent, negligently (Count Four) or intentionally (Count Seven), the legality of the Company.

Defendant's Motion presents further compelling evidence that it was Plaintiff who controlled and managed the logistics of forming the company. Plaintiff admits that the MyUSA account was paid for by Plaintiff and opened in Plaintiff's name. (Opp. 5:18-19). Although Plaintiff may deny having engaged in communication with MyUSA or

---

[5] *Even if* this testimony were *assumed* to be true, the merits of the Motion still stands, as the crucial element of damages cannot be proven by Plaintiff.

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1  providing instructions as to the corporate documents, the documentary evidence attached
2  to the Motion speak volumes. (Exhibits H, I, J, K, and L, to Sannoufi Decl.) In weighing
3  the documentary evidence more heavily than Plaintiff's own words, Count Four and
4  Count Seven fails.

5      Count Seven fails for additional reasons; not a single authority is cited as to why
6  Rule 10b-5 applies to the instant case, nor has Plaintiff rebutted any of Defendant's
7  evidence. Besides unsupported conclusory allegations, Plaintiff has not demonstrated any
8  genuine dispute of the facts warranting any recovery of money.

9  **III.   WHAT "WINDFALL" AND WHAT "SPOILS" DID DEFENDANT GET?**

10     The answer is none. It is undisputed that Defendant was promised an annual salary
11  for his services to the Company. (SS ¶57). It is undisputed that Defendant received no
12  salary, but only "expenses". (Sannoufi Depo, Ex. 2 to Plaintiff's Depo, 55-57). These
13  "expenses," which Plaintiff's accountant calls "professional fees" are still _less than_ the
14  $180,000/year promised as Defendant's salary. (SS¶37).

15     Due to Plaintiff's failure to attach any purported schedules to Ms. Hager's
16  declaration, there is no way to verify the amounts claimed in paragraph 9, nor the proper
17  classification of those amounts as Defendant's "personal expenses" rather than expenses
18  incurred by the business. See, Defendant's Evidentiary Objections to the Declaration of
19  Hager, concurrently filed herewith. Notwithstanding the questionability of Hager's
20  declaration, even assuming, _arguendo_, that those amounts in paragraph 9 were in fact
21  received by Defendant as "professional fees", they only add up to $500,279.84 over the
22  course of the four years during which the company was in operation. (Hager Decl., ¶9,
23  Exhibit 3 to Plaintiff's. Opp). This is $114,720.16 less than the $615,000.00 that was at
24  minimum promised to Defendant for three-and-a-half years of work.

25     Besides these "expenses" which are being categorized by Plaintiff as wage
26  payments to Defendant, everything else was split 50/50 between Defendant and Plaintiff.
27  (SS ¶58). This is undisputed. Plaintiff's accountant, who prepared and filed the
28  Company's tax returns, admits that the income/loss of the Company was split evenly

1    between Plaintiff and Defendant, every single year. (Hager Decl., ¶8, Exhibit 3 to

2    Plaintiff's Opp.) Meaning, every year there was a profit, Plaintiff shared in those profits,

3    and received credit on his personal taxes for any losses. Plaintiff has failed again to

4    produce any evidence supporting its claim that Defendant somehow received a windfall or

5    was justly enriched.

6         It is important to note that the Company no longer exists or operates. (SS¶63). The

7    physical operation of the Company was terminated by the unilateral termination of the

8    lease by the Company's landlord, and the illegality of the Company prohibits any further

9    existence or operation. (SS ¶62). In fact, Plaintiff's accountant, Ms. Hager, filed a "final"

10   tax return in 2016 for the Company, notating that the Company was "dissolved." (Exhibit

11   V to Supp. Mousavi Declaration).  So there are no "prospective profits and increased

12   business value" to be collected by anyone. (Opp. 3:10).

13        Plaintiff cannot prove any unjust enrichment, let alone any enrichment by way of

14   distributions to Defendant. Plaintiff got exactly 50% of the income of the Company per

15   the tax returns filed by his own accountant.

16   **IV.    PLAINTIFF HAS NO DAMAGES FOR ANY CLAIMS.**

17        There is no dispute that Plaintiff invested $80,000 in the Company, and received

18   back more than $98,000 in distributions from the Company. (Plaintiff's Statement ¶56;

19   Hager Decl., ¶6, Exhibit 3 to Plaintiff's Opposition). Plaintiff also received 50% of the

20   income (loss) of the Company every year in existence. (SS ¶91, 93-95; Hager Decl.,

21   ¶¶8A-D). Thus, Defendant has "restore[d] to the other party everything of value which he

22   has received from him," Civil Code §1691(b), and legally and equitably Plaintiff has been

23   made whole.[6]

24   _____

25   [6] Plaintiff alludes to the "potential" purchase of a shopping center in Chicago as a loss of
     investment opportunity. (Opp.18:6-8). This "potential" offer to purchase was never accepted by
26   the seller of the shopping center. (Hamadah Depo, 103:2-104:1, Exhibit 1 to Plaintiff's Opp.)
     Thus, the shopping center was never an opportunity available to Plaintiff, and there can be no
27   damages resulting therefrom.

28

Although Plaintiff seems to claim that his distributions from the Company is subject to tax consequences and should be adjusted accordingly for damages calculation, he cites absolutely no authority supporting such claim. Assuming, however, that Ms. Hager's calculations of Plaintiff's claimed tax liability are reliable, Plaintiff still received more than $80,000 from the Company. (Hager Decl, ¶¶8A-D, Exhibit 3 to Plaintiff's Opp., wherein +$8,567.00 + $4,808.00 - $6,806.00 equals $6,569 in alleged tax liability for the four years the Company was in operation). Since Plaintiff received more than $98,000 from the Company, even subtracting any alleged tax liability, Plaintiff still walked away a complete man.

Under no scenario, does Plaintiff have any damages in this case. No evidence of recoverable damages has been presented by Plaintiff to sustain his suit, and this Motion should be granted in its entirety.

## V.      CONCLUSION

Notwithstanding Defendant's Counterclaim, which can be dismissed by the Court at any time under Rule (a)(2), this Motion for Summary Judgment should be granted in its entirety.


DATED:  January 12, 2018                    MOUSAVI & LEE, LLP




                                             /s/ Amy A. Mousavi
                                            AMY A. MOUSAVI, ESQ.
                                            Attorneys for Defendant, SAMER SANNOUFI,
                                            MD., aka SAM SANNOUFI, MD, an individual
                                            Attorneys for Defendant, SAMER SANNOUFI,
                                            MD., aka SAM SANNOUFI, MD, an individual

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

PROOF OF SERVICE

STATE OF CALIFORNIA          )
                            )  ss:
COUNTY OF ORANGE             )

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 2020 Main Street, Suite 900, Irvine, CA  92614-8203.

On January 12, 2018, I electronically filed Reply Brief in Support of Defendant's Motion for Summary Judgment, or in the Alternative, Summary Adjudication with the Clerk of the United States District Court of California, using the CM/ECF system. The court's CM/ECF system will send an email notification of the filing and following parties and counsel of record who are registered with the Court's CM/ECF system:

Roger L. Cohen, Esq.
JABURG & WILK, PC
3200 N. Central Avenue, Suite 2000
Phoenix, AZ  85012
Telephone:  (620) 248-1000
Attorney for Plaintiff

Stephen B. Mashney, Esq.
MASHNEY LAW OFFICES, APC
335 N. Brookhurst Street
Anaheim, CA  92801
Attorney for Plaintiff

☒    **(BY ELECTRONIC SERVICE VIA CM/ECF SYSTEM)**
      In accordance with the electronic filing procedures of this Court, service has been effected on the parties above, whose counsel of record are registered participants of the CM/ECF system.

☒    **(FEDERAL)**
      I declare under penalty of perjury under the laws of the State of California that all the foregoing is true and correct, and that I am employed at the office of a member of the car of this Court at whose direction service was made.

Executed on January 12, 2018, at Irvine, California.



/s/ Dorian Ledbetter
Dorian Ledbetter