1   Amy A. Mousavi, SBN 228388
    Mousavi & Lee, LLP
2   2020 Main Street, Suite 900
3   Irvine, California 92614
    Telephone (949) 864-9667
4   Facsimile (949) 622-8980

5

6   Attorneys for Defendant, SAMER SANNOUFI, MD.,
    aka SAM SANNOUFI, MD, an individual,
7

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA (SOUTHERN DIVISION)

10

11  JAMAL HAMADAH, an individual,         Civil Action No. 8:17-cv-00132 CJC
                                          (JCGx)
12
                  Plaintiff,              The Honorable Cormac J. Carney
13
    vs.                                   **DEFENDANT'S RESPONSES TO
14                                        PLAINTIFF'S ADDITIONAL
                                          MATERIAL FACTS**
15  SAMER SANNOUFI, MD., aka SAM
    SANNOUFI, MD, an individual,          [Concurrently filed with Reply Brief in
16                                        Support of Defendant's Motion for
                  Defendant.              Summary Judgment, or in the Alternative,
17                                        Summary Adjudication, Evidentiary
                                          Objections to the Declaration of Coleen
18                                        Hager, Supplemental Declaration of Amy
                                          A. Mousavi, and Supplemental Declaration
19                                        of Samer Sannoufi]

20                                        Date: January 22, 2018
                                          Time: 1:30 p.m.
21                                        Dept.: 9B

22

23                                        Complaint Filed: January 25, 2017

24

25  | Plaintiff's Additional Material Facts | Defendant's Response |
    | --- | --- |
26  | 121.   The parties met when Mr. Hamadah visited Dr.  Sannoufi | Controverted. Plaintiff testified in his deposition that the first time he met |
27
28

1

**DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACT**

| | | |
|---|---|---|
| | in jail and offered him sympathy, friendship, and financial assistance. (Sannoufi Depo, Ex. 2, pp.129-130, 135). | Defendant was at a party. (Hamadah Depo., 66:12-67:4, Exhibit W, to Supp. Mousavi Decl.) Moreover, Plaintiff approached Defendant to let Defendant know that Plaintiff too was also in jail; Plaintiff was in jail for arson in a Jewish temple. (Sannoufi Depo., 129:18-130:9, Exhibit 2 to Plaintiff's Opp). |
| 122. | The present business venture arose after Dr. Sannoufi was acquitted and released from jail, and went to Mr. Hamadah's jewelry store "to thank him for being there." (Id., p. 133). | Agreed, but this is not a material fact as it has no relevance to any issue in this case. |
| 123. | Dr. Sannoufi approached Mr. Hamadah in connection with the proposed acquisition of an Urgent Care Clinic in Riverside, California. (Hamadah Depo, Ex. 1, pp. 391-392). | Controverted. Plaintiff discovered Defendant was planning to move and acquire a practice in California, and Plaintiff offered to invest in the practice. (Supp. Sannoufi Decl. ¶7). |
| 124. | At the time Dr. Sannoufi approached Mr. Hamadah, he and | Agreed in part. Although Defendant and Shoora were in contact with |

2
**DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACT**

| | |
|---|---|
| a friend (or relative) Ghaida (sometimes spelled "Gayda") Shoora, had been in communication with MyUSACorporation.com regarding the formation of a California limited liability company. (Hamadah Depo, Ex. 1, pp. 122-123, 147-149, 394-395). | MyUSACorporation, it is controverted that Defendant approached Plaintiff concerning the investment in the practice. Plaintiff approached Defendant, and took over communications with MyUSACorporation, opened the account, and paid for the formation of the company. (Exhibit H- L, to Sannoufi Decl.) |
| 125. Dr. Sannoufi solicited Mr. Hamadah's involvement as an investor in the company to be formed in the clinic:<br><br>He say he has clinic ready now he like.··He need money to buy this one.··He need partner, and he say, Jamal, I like -- I like you because you help me –<br><br>(*Id.*, p.32) | Controverted. Plaintiff discovered Defendant was planning to move and acquire a practice in California, and Plaintiff offered to invest in the practice. (Supp. Sannoufi Decl. ¶7). |
| 126. Dr. Sannoufi acknowledges that he caused the company to be formed and offered an investment opportunity to Hamadah in the form of a membership interest. Sannoufi demanded and expected to receive compensation, in the | Controverted. The first sentence does not even have a source citation, and is disputed. (SS ¶¶45-49). |

3

**DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACT**

| | |
|---|---|
| form of salary or expense payments, for his services. (Sannoufi Depo., Ex. 2, pp 55-57). | |
| 127. Mr. Hamadah ultimately agreed to invest $80,000.00 in exchange for a 50% interest in the company. (Hamadah Depo, Ex. 1, pp. 393). | Agreed. |
| 128. Dr. Sannoufi represented to Mr. Hamadah that the business was legal:<br><br>Q.· ·Did he tell you that what you were doing under the LLC documents was legal?<br><br>A.· ·Legal.···Everything legal.<br>Q.· ·Did he tell you that?<br><br>A.· ·Yes.<br><br>Q. Did you rely on that?<br><br>A. 100% .<br>(*Id.*, p. 384; see also pp. 385, 359-361, 382). | Controverted. Defendant did not represent anything regarding the legality of the proposed medical practice. (SS ¶43). Additionally, Defendant retained an attorney to review and approve of the purchase of the medical practice. (SS ¶53). |
| 129. Mr. Hamadah would not have invested in the business if he knew it was illegal: | Defendant does not have personal knowledge to agree or disagree. |

4

**DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACT**

| | | |
|---|---|---|
| 1 2 3 4 | I don't want to go partners with him if it's not legal. (*Id*., p. 255). | |
| 4 5 6 7 8 9 10 | 130. Dr. Sannoufi further stated to Mr. Hamadah that in order for the transaction to be legal, he would have to have 51% control of the company. (*Id*., p. 139). | Controverted. Defendant never made such statement or representation. (Supp. Sannoufi Decl. ¶8). |
| 11 12 13 14 15 16 17 18 19 20 21 22 23 24 | 131. At the same time he presented Mr. Hamadah with a handwritten document reflecting his 51% control, which he and Mr. Hamadah signed. A copy of that document has never been provided to Mr. Hamadah, however. Mr. Hamadah relied on Dr. Sannoufi's representation that the agreement would be legal in proceeding with the transaction and in making an investment in the company. (*Id.*, pp. 359-360). | Controverted. See response to 130. |
| 25 26 27 28 | 132. Dr. Sannoufi acknowledges that, when he became licensed to practice medicine in | Agreed. |

5

**DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACT**

| | |
|---|---|
| California, he was obligated to comply with California law. (*Id.*, Sannoufi Depo, Ex. 2, pp. 250, 267-269). | |
| 133. He acknowledges further that he never looked on the medical board website and never saw the "Guide to Laws Governing the Practice of Medicine," which was available for download from the Board's website. (*Id*., p. 254). | Agreed. Defendant hired an attorney specifically to advise him regarding the transaction, and relied on such advice. (SS¶110). |
| 134. Because Mr. Hamadah was providing money, the account with MyUSA was opened in his name. In addition, Mr. Hamadah received communications from MyUSA. However, Mr. Hamadah never engaged in communications to MyUSA and provided no instructions or input regarding the company documents, all of which were handled by Ms. Shoora. (Hamadah Depo., Ex. 1, pp. 122-123, 147-149, 162-164, | Controverted. Plaintiff engaged in communication with MyUSACorporation, and signed all documents. (Exhibits H – L, to Sannoufi Decl.) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACT**

| | |
|---|---|
| 394-395). | |
| 135. In connection with the purchase of the clinic, Dr. Sannoufi retained an attorney for limited purposes as stated in an email from the attorney, which did not include reviewing the transaction for legality. Mr. Hamadah had no communications with the attorney but allowed his credit card to be used to pay the attorney's fee. (Id., pp. 178-180). | Controverted. Just because the retained attorney failed to discover the illegality of the company, it does not mean it was excluded from the scope of his representation. Any competent attorney would have discovered the illegality of an LLC engaged in the practice of medicine, and would have advised his client accordingly. (Supp. Mousavi Decl. ¶10). |
| 136. Dr. Sannoufi represented to Mr. Hamadah, and the purchase agreement reflects, that the sole asset being acquired was the PrimeCare contract. (Ex. 19 to Hamadah's Depo, Ex. 1; see also Ex. 1, p. 382). | Controverted. The agreement speaks for itself, and it states that "PrimCare Contract is the most important asset contemplated by this agreement in addition to the limited hard assets listed in Exhibit A." (Exhibit M, to Sannoufi Decl.) |
| 137. Dr. Sannoufi represented to Mr. Hamadah that the PrimeCare contract would | Controverted. Defendant never made such representations regarding the anticipated revenues from Primecare. (Supp. Sannoufi |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACT**

| | |
|---|---|
| produce monthly revenues and in addition would produce bonuses of $75,000.00 every six months. (Id., pp. 107-108). | Decl. ¶9). |
| 138. It was initially discussed that Dr. Sannoufi would receive a salary of $180,000.00 (the amount is disputed) and that profits after payment of expenses would be split 50/50. (Id., p. 123). | Agreed in part. Other than the exact amount of the salary, the rest is agreed. |
| 139. However, Dr. Sannoufi elected not to take a salary and instead took compensation in the form of personal expenses. (Sannoufi Depo, Ex. 2, pp. 55-57). | Controverted. Defendant did not elect to not receive a salary. As can be seen in the tax returns, the Company was never able to financially pay Defendant his salary. (Exhibits D-G, to Mousavi Decl.). |
| 140. The company's accountant tracked the expenses and classified them as "non-K-1 earnings." Dr. Sannoufi never advised the accountant that there was an unpaid amount due him for accrued salary and the company's books did not reflect any such liability. | Controverted. The Company's accountant, who is Plaintiff's personal accountant, filed tax returns for 2013-2015, classifying the expenses as "business expenses," not "non k-1 earnings." (Supp. Mousavi Decl. ¶4). The accountant now claims these expenses are Defendant's "personal expenses." *Id*. However, no tax returns have been amended. *Id*. |

8

**DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACT**

| | |
|---|---|
| (Hager Decl. Ex. 3). | |
| 141.   In fall, 2016, Dr. Sannoufi sent Mr. Hamadah a letter stating that the clinic's lease had expired and that the landlord would not renew.. That letter did not mention anything about the business being unlawful. When Mr. Hamadah raised questions and refused to sign a document dissolving the company, Dr. Sannoufi for the first time advised Mr. Hamadah that the business was illegal. (Hamadah Depo, Ex. 2, p. 247, 267, 273 – 275, 278). | Agreed in part, with qualification. The letter did not mention the illegality of the Company, because Defendant had not yet learned of the illegality of the Company. Once Defendant learned of the illegality, he advised Plaintiff and sent dissolution papers for Plaintiff to review and sign. (SS ¶61). |
| 142.   Purportedly because the business was unlawful, Dr. Sannoufi shut down the clinic and transferred the PrimeCare contract and the ongoing clinic operations to a new company of which he is the sole owner. The new company has the benefit of the PrimeCare contract, revised to extend its | Controverted. No asset of the Company, including the Primecare contract, was transferred to Defendant. (Supp. Sannoufi Decl. ¶3). Moreover, the source citation provided by Plaintiff does not contain the "facts" alleged. |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACT**

| | |
|---|---|
| term, and two of the three employees of the clinic immediately went to work for Dr. Sannoufi's new company. (Sannoufi Depo., pp. 103-104, 105-107, 112-114). | |
| 143. Dr. Sannoufi has neither restored nor offered, on the condition that Mr. Hamadah do likewise, to restore to Mr. Hamadah "everything of value which he has received from him under the contract" as required by Civil Code § 1691(b). To the contrary, Dr. Sannoufi demanded that Mr. Hamadah consent to dissolution of the Company without any equitable adjustment and without undoing the Company's prior existence; Dr. Sannoufi's theory of relief would therefore leave the Company intact until the date he allegedly discovered the illegality and would provide no equitable adjustment under Civil Code § | Controverted. Plaintiff has already been fully restored of his $80,000 investment, by way of receiving distributions in excess of $98,000. (Hager Decl. ¶6, Exhibit 3 to Plaintiff's Opp.) |

10

**DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACT**

| | |
|---|---|
| 1692.  (Sannoufi Depo, Ex. 2, pp. 221, 227, 228). | |
| 144.   Dr. Sannoufi has been cited by the Medical Board of California for failure to register the name of the Clinic and for violation of the professional practice statute, in connection with practicing with the Company. (Sannoufi Depo., Ex. 2, pp. 124-125). | Agreed with qualification. The complaint to the medical board, which was filed by Plaintiff, refers to the illegality of a medical practice formed as an LLC, and a layperson having ownership in a medical practice. (Exhibit T, attached to Supp. Sannoufi Decl.) |
| 145.   The present transaction was entered into in lieu of other equally lucrative (and clearly lawful)investment opportunities, in the form of the potential purchase of a shopping center property in Chicago, Illinois, and/or the profits he would have earned from the Company, had it been properly set up in accordance with California law. (Hamadah Depo, Ex. 1, p. 107). | Controverted.  This "potential" offer to purchase was never accepted by the seller of the shopping center. (Hamadah Depo, 103:2-104:1, Exhibit 1 to Plaintiff's Opp.) |

11

**DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACT**

1   DATED:  January 12, 2018          MOUSAVI & LEE, LLP

2

3

4                                          /s/ Amy A. Mousavi
                                        AMY A. MOUSAVI, ESQ.
5                                       Attorneys for Defendant, SAMER SANNOUFI,
                                        MD., aka SAM SANNOUFI, MD, an individual
6                                       Attorneys for Defendant, SAMER SANNOUFI,
7                                       MD., aka SAM SANNOUFI, MD, an individual

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACT**

1

PROOF OF SERVICE

2

STATE OF CALIFORNIA              )
                                 ) ss:
3

COUNTY OF ORANGE                 )

4

5       I am employed in the County of Orange, State of California. I am over the age of 18 and not
a party to the within action; my business address is 2020 Main Street, Suite 900, Irvine, CA  92614-
6       8203.

7       On January 12, 2018, I electronically filed Evidentiary Objections to the Defendant's
Responses to Plaintiff's Additional Material Fact with the Clerk of the United States District Court
8       of California, using the CM/ECF system. The court's CM/ECF system will send an email
notification of the filing and following parties and counsel of record who are registered with the
9       Court's CM/ECF system:

10      Roger L. Cohen, Esq.
JABURG & WILK, PC
11      3200 N. Central Avenue, Suite 2000
Phoenix, AZ  85012
12      Telephone:  (620) 248-1000
Attorney for Plaintiff
13

14      Stephen B. Mashney, Esq.
MASHNEY LAW OFFICES, APC
15      335 N. Brookhurst Street
Anaheim, CA  92801
16      Attorney for Plaintiff

17      ☒      (**BY ELECTRONIC SERVICE VIA CM/ECF SYSTEM**)
18             In accordance with the electronic filing procedures of this Court, service has been effected on
               the parties above, whose counsel of record are registered participants of the CM/ECF system.
19

20      ☒      **(FEDERAL)**
               I declare under penalty of perjury under the laws of the State of California that all the
21             foregoing is true and correct, and that I am employed at the office of a member of the car of
               this Court at whose direction service was made.
22

        Executed on January 12, 2018, at Irvine, California.
23

24

25

                                                              /s/ Dorian Ledbetter
26                                                            Dorian Ledbetter

27

28